545 P.2d 58

Bruce E. BABBITT, the Attorney General of the State of Arizona, Appellant,

v.

Ron ASTA, a duly elected Supervisor of Pima County, Arizona, Dee T. O'Neill, a duly appointed commissioner of the Planning and Zoning Commission of Pima County, Arizona, Roy M. Emrick, Patricia H. Waterfall, and Priscilla G. Robinson, residents of Pima County District I, Appellees.

No. 2 CA–CIV 1983.

Court of Appeals of Arizona, Division 2.

Jan. 27, 1976.

Rehearing Denied Feb. 24, 1976.

Review Denied March 9, 1976.

**548**

Bruce E. Babbitt, Atty. Gen., Phoenix, by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellant.

Risner, Wolf & Raven by Peter B. Keller, Tucson, for appellees.

## OPINION

KRUCKER, Judge.

This was an action for declaratory relief under A.R.S. § 12–1831 et seq. On cross motions for summary judgment the trial court held that a portion of A.R.S. § 11–803(B) (Supp.1975) violated the Equal Protection Clause of the Fourteenth Amendment and Art. 2, § 13 of the Arizona Constitution. The Attorney General has timely perfected this appeal from the judgment. For the reasons set forth in this opinion, we reverse.

The undisputed facts are as follows. On February 20, 1973, appellee Pima County Supervisor Ron Asta appointed appellee Dee T. O'Neill to a two-year term on the Pima County Planning and Zoning Commission. A.R.S. § 11–803(B), the statute that authorized the appointment, provides as follows:

"In the counties having five supervisorial districts, the county planning and zoning commission shall consist of ten members who shall be qualified electors of the county. Two members shall be appointed from each supervisorial district by the supervisor from that district and *not more than one of the two shall be a resident of an incorporated municipality*. Members of the commission shall serve without compensation except for reasonable travel expenses. (Emphasis added)

When O'Neill was appointed to the Commission, she lived in Pima County outside the corporate limits of Tucson. On February 25, 1974, however, the area surrounding O'Neill's home was annexed by the City of Tucson and O'Neill became a Tucson resident. Since appellee Asta's other Commission appointee was also a Tucson resident, it became clear under § 11–803(B) that Asta could not reappoint O'Neill to a new term after the expiration of her current one. Accordingly, on February 7, 1975, Asta and O'Neill, and Roy Emrick, Patricia Waterfall and Priscilla Robinson, residents of Tucson, filed their complaint for declaratory relief in this action.

At the time this action was brought, 97.1 percent of the voters of appellee Asta's supervisorial district lived within the corporate limits of Tucson.

The trial court made the following findings of fact and conclusions of law:

"1. That the legislation that is the subject matter of this complaint disenfranchises certain persons on certain local issues.

"2. That the legislation gives to 3% of the electorate the same voice on local issues as 97% of the electorate in Pima County District No. 1.

3. That the overriding objective of equal protection of the laws is that there must be substantial equality of representation of the population among various districts so that the vote and the voice of any citizen is approximately equal in weight to that of any other citizen.

4. That there is no overriding, legitimate consideration in the instant matter to permit a divergent deviation of 97% to 3%.

5. That a statute that disenfranchises certain persons on local issues violates the equal protection rights guaranteed by the Constitution.

IT IS ORDERED, ADJUDGED AND DECREED:

1. That A.R.S. 11–803, as amended, is unconstitutional and violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution and the equal privileges of citizenship secured by Article 2, Section 13 of the Arizona Constitution. This ruling is limited only to that clause that says 'not more than one of the two shall be a resident of an incorporated municipality.' Such portion of said statute is null and void.

2. That the Plaintiffs are awarded their costs in this action.

3. That each of the parties are to bear their own attorney's fees."

■ The Attorney General now contends that the challenged portion of A.R.S. § 11–803(B) is constitutional and urges us to uphold it. A statute is presumed to be valid and the party asserting its unconstitutionality bears the burden of overcoming the presumption. *Arizona R.I.C.A. Lands, Inc. v. Ainsworth,* 21 Ariz.App. 38, 515 P. 2d 335 (1973). We will therefore first examine appellees' arguments in support of the judgment below.

Appellees argue that § 11–803(B) is invalid because it produces an "unreasonable situation" when applied in this case. They

note that the City of Tucson could annex the whole of Asta's supervisorial district at some time in the future. Since all the residents of his district would then be residents of an incorporated municipality, Asta would be limited by § 11–803(B) to appointing one member to the Planning and Zoning Commission—in direct contradiction to his duty under that same section to appoint two.

■ We agree that the scenario described by appellees would be anomalous. However, it is not within the power of this court to construe a statute on the basis of hypothetical conditions that have not yet occurred. Appellees' concerns, though clearly valid, are better addressed to the legislature than to us.

Appellees contend that § 11–803(B) offends the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. They also contend that it violates Art. 2, § 13 of the Arizona Constitution. Art. 2, § 13 and the Equal Protection Clause have the same effect for all practical purposes, *Valley National Bank of Phoenix v. Glover,* 62 Ariz. 538, 159 P.2d 292 (1945); *Edwards v. Alhambra Elementary School Dist. No. 63,* 15 Ariz.App. 293, 488 P.2d 498 (1971), and we will therefore consider these contentions as one.

■ Appellees correctly note that courts will strictly scrutinize a statutory classification that infringes a fundamental right and that such a classification cannot be upheld unless necessary to effectuate a compelling state interest. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). They argue that by limiting the number of city residents that may be appointed to the Planning and Zoning Commission, § 11–803(B) infringes the fundamental right to vote[1] by subjecting the 97.1 percent of the residents of Asta's district who live in Tucson to a "form of disenfranchisement." In support of this argument appellees cite *Citizens for Community Action at the Local*

1. *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 1964).

*Level, Inc. v. Ghezzi,* 386 F.Supp. 1 (W.D. N.Y.1974) and *Reese v. Dallas County, Alabama,* 505 F.2d 879 (5th Cir.1974). The United States Supreme Court has reversed the 5th Circuit decision in *Reese. Dallas County v. Reese,* 421 U.S. 477, 95 S.Ct. 1706, 44 L.Ed.2d 312 (1975). Appellees' reliance on the 5th Circuit's opinion in *Reese* is therefore somewhat ill advised. But *Reese* and *Citizens* are inapposite for an even more fundamental reason. Both *Reese* and *Citizens* involved elections.

■ As the Attorney General correctly points out, however, "it is the power to appoint and not the right to vote that is at issue in this case." We think *Sailors v. Kent Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), which neither party has cited, is controlling on this point. In that case the Kent County, Michigan School Board members were chosen by delegates from local school boards. A three-judge panel upheld the Michigan statute authorizing that system and the Supreme Court affirmed. It noted:

"A vast array of facts is assembled showing alleged inequities in a system which gives one vote to every local school board (irrespective of population, wealth, etc.) in the selection of the county board." 387 U.S. at 107, 87.S.Ct. at 1551, 18 L.Ed.2d at 653.

The Court held (1) the county school board exercised administrative functions and there was no constitutional reason why its members could not be chosen by appointment rather than by election; and (2) "[s]ince the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, *the principle of 'one man, one vote' has no relevancy."* 387 U.S. at 111, 87 S.Ct. at 1553, 18 L.Ed. 2d at 655 (Emphasis added). Although after *Sailors* the Supreme Court rejected the legislative-administrative dichotomy as

a test for determining the applicability of the one person–one vote rule to public elections, *Hadley v. Junior College Dist. of Metro. Kansas City, Mo.,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); *Avery v. Midland County, Texas,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968), *Sailors* retains its authority to the extent it holds the one person–one vote rule inapplicable to appointive bodies of nonlegislative officers. *See, Hadley,* supra, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d at 52; *Avery,* supra, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d at 53–54.

■ In the case at bench, as in *Sailors,* members of the Pima County Planning and Zoning Commission are appointed and not elected. A perusal of A.R.S. Title 11, Ch. 6, Articles 1 and 2, quickly reveals that the Commission's functions are wholly nonlegislative. Under *Sailors,* therefore, the one person–one vote rule is inapplicable.

■ Appellees contend that strict scrutiny should nonetheless be applied to § 11– 803(B) because it infringes a fundamental right wholly distinct from the right to vote—i. e., the right to be eligible for appointive office. In support of their assertion that this right is fundamental, appellees cite *Thompson v. Mellon,* 9 Cal.3d 96, 107 Cal.Rptr. 20, 507 P.2d 628 (1973). *Thompson* merely stands for the proposition that the right to be a candidate for *elective* office is a fundamental right. The rationale of *Thompson* is that statutory requirements which restrict the eligibility of otherwise qualified persons to become candidates for elective office in turn restrict the voters' right to vote for candidates of their choice. Thus, under the *Thompson* rationale the right to be a candidate for elective office is fundamental only because restricting it affects the fundamental right to vote.[2] Since the right to vote is not affected by restrictions on eligibility for *appointive* office, we think *Thompson* fails to support appellees' as-

---

2. We express neither approval nor disapproval of the *Thompson* rationale. We have

merely set it forth in order to discuss the related issue raised by appellees.

sertion that the right to be eligible for appointive office is fundamental. Strict scrutiny should therefore not be applied.

Although appellees argued below that § 11–803(B) infringes the fundamental right to travel, the trial court did not base its decision on that ground and appellees have not argued it in their brief. We would note that cases on the right to travel have uniformly dealt with durational residency requirements. Those cases have generally held such requirements violative of equal protection because they arbitrarily penalize those who have recently exercised their right to travel. *See, e. g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed. 2d 274 (1972); *Green v. McKeon,* 468 F.2d 883 (6th Cir. 1972); *Wellford v. Battaglia,* 343 F.Supp. 143 (D.Del.1972), *aff'd per curiam,* 485 F.2d 1151 (3d Cir. 1973). Here, the residency requirement is not a durational one.

Since the classification of § 11–803(B) does not burden a fundamental right, the rational basis test must be applied. Under that test a statutory classification does not violate equal protection as long as it is reasonably related to the effectuation of a legitimate state interest. *See, Southwest Engineering Co. v. Ernst,* 79 Ariz. 403, 291 P.2d 764 (1955). We agree with the Attorney General that § 11–803(B) meets this test. We note first that there is nothing in the legislative history concerning the purpose of the challenged language. As the Attorney General argues, however, §§ 11–801 (Supp.1975) and 11–802 (Supp.1975) provide a clue. Sec. 11–801(1) provides:

"In this chapter, unless the context otherwise requires:

1. 'Area of jurisdiction' means that part of the county outside the corporate limits of any municipality. . . ."

Sec. 11–802, which establishes the Planning and Zoning Commission, provides that it will:

" . . . consult with and advise [the Board of Supervisors] regarding matters of planning, zoning, and subdivision platting and in the manner provided in this chapter, adopt and enforce such rules, regulations, ordinances and plans as may apply to the development of its *area of jurisdiction.*" (Emphasis added)

Under these sections, the Commission's activities directly affect only the unincorporated areas in the county. It may therefore be inferred that the interest sought to be furthered by the challenged provision of § 11–803(B) is to insure that the concerns of residents of such areas will continue to be felt by the Commission's members. We think that interest is legitimate and cannot say that § 11–803(B) is not reasonably related to effectuation of such interest.

Reversed.

HOWARD, C. J., and HATHAWAY, J., concur.