*261 OPINION OF THE COURT
Michael A. Gary, J.
Defendant Jose Cancel was arrested and charged with driving while intoxicated pursuant to Vehicle and Traffic Law § 1192 (2) and (3). In a jury trial held before me, at the conclusion of the People’s case and at the close of all the evidence, defendant moved for a trial order of dismissal pursuant to CPL 290.10. Defendant contended the evidence was legally insufficient to establish the charge of Vehicle and Traffic Law § 1192 (2). Defendant argued that since his breathalyzer test and reading was .10 of 1% by weight of alcohol in his blood, hereinafter .10, and the breathalyzer machine had a margin of error of plus or minus .001, there was a reasonable doubt which precluded a jury verdict of guilty of this charge. This court reserved decision and defendant was convicted of violating Vehicle and Traffic Law § 1192 (1), as a lesser included offense of section 1192 (3), and section 1192 (2). For the reasons stated herein, defendant’s motion for a trial order of dismissal is denied.
TRIAL EVIDENCE
Police Officers Palladino and Hernandez, experienced officers assigned to Highway 1, testified they were patrolling 125th Street on a driving-while-intoxicated assignment on December 22, 1986. They observed defendant, operating a tan Dodge station wagon east on 125th Street at approximately 30 miles per hour, change from the right to left lanes, then back to the right lane, without signalling. Approximately 500 feet later, defendant repeated this swerving motion without signalling. The police patrol followed defendant for a five-minute period about 1 to 1 Vz car lengths behind defendant in the right lane, observing defendant drive several hundred feet. No cars obstructed their view of defendant’s car. Traffic was very light and defendant did not cut off any other cars when changing lanes.
The officers directed defendant to pull over. Police Officer Palladino testified defendant readily complied, parking his car at a bus stop, in a smooth, steady manner. Police Officer Palladino approached defendant’s car on the driver’s side, at which time defendant exited the vehicle. Police Officer Palladino testified he smelled alcohol on defendant from a distance of five feet, defendant’s eyes were watery, red and bloodshot. He requested defendant to walk to the adjacent sidewalk and *262 observed defendant using the car to support himself. Defendant walked in an unsteady manner. Under cross-examination, Police Officer Palladino testified he did not request defendant perform any coordination tests because he was sure defendant was driving while under the influence of alcohol. Police Officer Hernandez testified he observed defendant leaning on the car to support himself. He described defendant’s gait as uncoordinated and staggering, that defendant had a strong odor of alcohol, watery and bloodshot eyes and his clothing was slightly disarrayed.
Police Officer Palladino further testified defendant indicated he had had a few beers and was going to Connecticut. Defendant understood Police Officer Palladino’s directions, had a Spanish accent and exhibited slurred speech. Upon request, defendant produced a class 4 chauffeur’s license and registration for the car. Defendant is not the owner of the car. Police Officer Hernandez testified he moved defendant’s vehicle into a legal parking space and that no search of the car was made.
Defendant was arrested at approximately 7:30 p.m. He was driven to the 25th Precinct. Police Officer Palladino read defendant the Miranda rights en route. At the 25th Precinct, Police Officer Palladino completed pedigree forms with the assistance of defendant, defendant’s personal property was vouchered, and he was transported to the 28th Precinct for the breathalyzer test. At the 28th Precinct, defendant informed Police Officer Palladino he had consumed two 16-ounce beers around 5 o’clock and stopped drinking at 6 o’clock.
Police Officer Palladino testified he observed defendant from the time of arrest until their arrival at central booking and did not see him belch, hiccup, regurgitate or eat during that period of time. Police Officer Hernandez similarly testified he observed defendant from his arrest until their arrival at the 28th Precinct and did not see him belch, hiccup, smoke or place any foreign substance in his mouth.
The People submitted documentary evidence that the breathalyzer machine and ampoule were in proper working condition and thus able to accurately reflect the blood alcohol level of defendant. The certificate of breathalyzer analysis documents the fact that the test ampoules were checked and found to contain the proper chemical solution. The police department maintenance unit performed calibration tests at intervals of 41 days and 3 days prior to the date defendant’s breath was tested and determined the machine was function *263 ing properly. Simulator tests were run 126 days prior to defendant’s breath test and 4 days afterward and the machine was found to be working properly.
Police Officer Delgado, a Highway 1 officer, radar section, administered the breathalyzer test to defendant at approximately 8:30 p.m. This witness is a certified breathalyzer operator with 50-60 hours of training who was recertified in February 1985. He has administered approximately 100 breathalyzer tests. Police Officer Delgado testified he informed defendant of his right to refuse to take the breathalyzer test and the consequences thereof under Vehicle and Traffic Law § 1194. Defendant agreed to submit to the test but refused to take a coordination test. Defendant was videotaped before and after the breathalyzer test. This videotape was shown to the jury.
Prior to administering the test, Police Officer Delgado ascertained all radios on that floor of the building were turned off to prevent any interference with the functioning of the breathalyzer. This witness, using a picture of the breathalyzer as a visual aid, explained how to administer the breathalyzer test and the New York City Police Department procedures that must be followed. He testified he complied with all departmental requirements; that the breathalyzer machine is always left on (to avoid delays caused by the need to warm up the machine) so he did not have to turn it on. Police Officer Delgado is not responsible for or involved in the maintenance of the machine and has no expertise in that area.
In answer to the court’s question, Police Officer Delgado testified the margin of error for this unit is .001. Moreover, he testified that hiccuping, belching, smoking or placing any foreign substance in defendant’s mouth could affect the test results. The breathalyzer result might register a blood alcohol content, hereinafter BAG, of .099 or .101. Defendant’s breathalyzer test result was .10. In this witness’s opinion, defendant was intoxicated.
The defendant presented no evidence.
LEGAL ANALYSIS
The results of scientific tests for alcohol content have been admissible since 1941 to prove driving while intoxicated. (See, People v Cruz, 48 NY2d 419 [1979].) However, the legislative history of Vehicle and Traffic Law § 1192 (2) begins in 1960 and is cogently set forth in People v Schmidt (124 Misc 2d 102 *264 [Crim Ct, NY County 1984]) and People v Fox (87 Misc 2d 210, 214-220 [North Castle Justice Ct, Westchester County 1976]). This court has read the legislative history of the statute and agrees with the court in Fox that: "The Legislature has been most concerned with evidence as to the effect that large quantities of alcohol have on a driver. Accordingly, the Legislature has increased the scope of the Judge’s power to punish for such offense. It also has provided that the offense is a per se offense, so as to eliminate the uncertainty that prima facie tests invariably create. Originally, the per se offense was established only by a relatively high level of blood-alcohol, but the Legislature has repeatedly lowered the alcohol level requisite for conviction.” (People v Fox, supra, at 220.) It should be noted that when the New York Legislature set the present level of .10 of blood alcohol content for intoxication, it was reacting to the fact that by 1972 that was the standard recommended by the National Highway Safety Bureau after extensive testing. Moreover, 42 States had already enacted legislation which reduced the blood alcohol level to .10 or less and 2 States had even lowered it to .08. (1972 NY Legis Ann, at 289.)
Defendant cites two decisions for the proposition that the breathalyzer reading of .10, given the machine’s margin of error, does not constitute proof beyond a reasonable doubt. In People v Hellwig (22 Misc 2d 286 [Schenectady County Ct I960]), the County Court, acting as an appeals court, reversed the conviction of a defendant found to have had a blood alcohol content of .16 at a time when the statute provided that a reading of .15 was prima facie evidence of intoxication. Hellwig is easily distinguished on the law and on the facts as well. First, as to the applicable law, defendant concedes that, in 1960, Vehicle and Traffic Law § 1192 (2) provided that the test results were only prima facie evidence not per se evidence of intoxication, as has been the case since 1971. Second, the court in Hellwig specifically found that the prima facie value of the blood test was contradicted by other evidence which showed defendant had operated his car safely through congested traffic before the accident and that his unsteady walk may have been the result of an arthritic condition. Given the conflicting factual inferences presented from the test results and the other evidence of the defendant’s intoxication, the court accorded the benefit of the doubt to the defendant.
In the recently reported decision of People v Schaefer (135 Misc 2d 554 [Yonkers City Ct, Westchester County 1987]), the *265 defendant was found not guilty after a bench trial of violating Vehicle and Traffic Law § 1192 (2). The prosecution arose out of an accident in which the defendant’s car struck and killed a young child and the Grand Jury returned a no true bill on a reckless assault charge (Penal Law § 120.05 [2]). The breathalyzer reading was .10 on the Smith and Wesson Model 900A, the same machine used in the instant case. The court credited a defense expert’s testimony that the breathalyzer machine has an error factor of .001, plus or minus. Defendant points to certain language in Schaefer that he urges should be dispositive of the facts before this court: "This [a breathalyzer reading of precisely .10] is the lowest possible reading one must have in his system in order to be convicted of the crime charged. If the machine is susceptible to the slightest error, the benefit of the error must inure to the defendant. If there is the slightest possibility of human error in the operation of the instrument, that error must inure to the benefit of the defendant.” (People v Schaefer, supra, at 555.)
This court does not reach this same conclusion for the reasons cited below. Moreover, a thorough examination of Schaefer (supra) reveals a radically different set of facts than the case at bar.
To begin with, the Schaefer court emphasized that "the breathalyzer test was the sole evidence utilized to attempt to prove the defendant’s guilt” (People v Schaefer, supra, at 555). Except for a slight smell of alcoholic beverage, the investigating detective at the accident scene testified that the defendant exhibited none of the usual indicia of intoxication, i.e., slurred speech, glassy eyes or unsteadiness on his feet. In fact, the witness stated the defendant appeared "fine in all respects” (People v Schaefer, supra, at 556).
In sharp contrast to the Schaefer court’s finding that there was no evidence of intoxication besides the unreliable breath test result, the evidence of intoxication before this jury included the following: testimony of the arresting officers that the defendant swerved from lane to lane without signalling; that he smelled of alcohol from five feet away; that he staggered and had bloodshot eyes; and, in the opinion of Police Officer Delgado, that he appeared intoxicated nearly two hours after being arrested. Indeed, the jury found by its verdict that there was proof beyond a reasonable doubt that the defendant was driving while impaired.
However, a subjective analysis of defendant’s behavior and *266 condition is irrelevant when a violation of Vehicle and Traffic Law § 1192 (2) is at issue. Although critical elements of Vehicle and Traffic Law § 1192 (1) and (3) crimes, the legislative intent behind enacting Vehicle and Traffic Law § 1192 (2) was to create a crime provable solely by objective scientific criteria. (People v Schmidt, supra, at 108.) The sole burden placed upon the People is to place into evidence legally probative breathalyzer or other chemical test results, in compliance with Vehicle and Traffic Law § 1194, evidencing a breathalyzer count of .10 or more.
Equally important, the Schaefer court found that the particular breathalyzer machine used to test the defendant had been sent to Albany for a major overhaul twice; the first time a little over a year before defendant’s test and, significantly, just 18 days afterwards. Both times the machine was found to be in terrible condition; acid stained and filthy (People v Schaefer, supra, at 557-558). The defense expert testified that because the machine had to be rebuilt twice in a period of slightly more than one year, this indicated it had been abused and the reading could not possibly be true. In his uncontradicted opinion, the internal damage reflected in the machine’s records was the result of the mishandling of the test ampoule, permitting some of its fluid to escape and drip into the machine. (People v Schaefer, supra, at 558.)
Not surprisingly on this set of facts, the Schaefer court found that it was dealing not so much with the issue of the margin of error’s significance on a true reading of .10, but rather with a totally unreliable machine: "The reported condition of the machine is such that no reasonable person could give it any credence whatsoever. In the condition that the machine was reported to be in, it is doubtful that its reliability could be useful in a DWI prosecution with readings of .15 or .20, much less for a reading of .10. This is not the quality of evidence necessary to support a criminal conviction.” (People v Schaefer, supra, at 559.)
The court goes on to list six reasons for its finding of reasonable doubt as to the defendant’s guilt, including the breathalyzer machine’s margin of error. It also opines that any of the six reasons standing alone is sufficient to establish reasonable doubt. This court regards the actual holding of Schaefer (supra), as limited by its facts, to be contained in the above-quoted finding that the evidence was insufficient due to the breathalyzer’s proven unreliability. All else is mere dicta.
*267 A BAG of .10 represents a significant loss of one’s ability to safely operate a motor vehicle. In this case, the People’s documentary evidence demonstrated, to the obvious satisfaction of the jury, that the breathalyzer machine here had been tested and calibrated shortly before its use on defendant and that it was working properly. A jury’s verdict will not be set aside on the grounds of reasonable doubt so long as the evidence in the case is sufficient to support the jury’s conclusion. Here, the jury was clearly confronted with the issue of whether the breathalyzer reading, given the possibility that the margin of error came into play, was really .10, .099, or even .101. This court finds the jury’s resolution of this issue against the defendant is amply supported by the other evidence in the case regarding the accuracy and reliability of the breathalyzer machine together with the above-mentioned eyewitness testimony of defendant’s intoxication.