797 P.2d 738

**Marion William ISBELL, III, Petitioner–Appellant,**

v.

**Charles L. MILLER, Director, Arizona Department of Transportation; Lee A. Prins, Division Director, Arizona Department of Transportation; Arizona Department of Transportation and The Attorney General, State of Arizona, Respondents-Appellees.**

No. 1 CA–CV 89–233.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 30, 1990.

Richard D. Coffinger, Glendale, for petitioner-appellant.

Robert K. Corbin, Atty. Gen. by Laurie A. Woodall, Asst. Atty. Gen., Phoenix, for respondents-appellees.

## OPINION

VOSS, Judge.

Appellant, Marion William Isbell, III, appeals from the superior court's affirmance of an administrative order which suspended his driver's license for driving under the influence of an intoxicating beverage. He raises the following issues for our review.

1) Whether A.R.S. § 28–694 requires an administrative hearing officer (ALJ) to consider extrapolation evidence;

2) if the ALJ is not required to consider extrapolation evidence, whether section 28–694 is unconstitutional because it lacks a rational basis; and

3) whether the ALJ was required to consider the inherent error in breath testing equipment.

Isbell was stopped and arrested for driving while under the influence of an intoxicating beverage on February 16, 1988. He was transported to the police station where, approximately one hour after his arrest, he was given a Breath Intoxilyzer Test. The test indicated that his blood alcohol level (BAC) was .10. The instrument used to test Isbell had received regu-

lar maintenance on February 8, 1988. The maintenance report indicated that there was no differential or a .001 higher reading than the alcohol sample used to calibrate it. The machine was then adjusted. It was serviced again on February 18, 1988. The maintenance report from that service indicates that there was no differential or a .004 lower reading than the alcohol sample used to calibrate it. No adjustments were made. Isbell requested that a sample of his breath be preserved for independent testing, which was done by his expert witness, Lucien Haag.

Haag found Isbell's breath sample to be .096. Defense counsel submitted a report from Haag at the administrative suspension hearing. It stated the results Haag obtained from his independent testing and extrapolated the test results to the time of driving. The extrapolation results indicated that if Isbell had taken the Breath Intoxilyzer Test contemporaneous with his arrest, his blood alcohol would have been below both the .10 found by the police officer and the .096 found by Haag's independent testing because Isbell would have been in the alcohol absorptive phase at the time of driving. Haag also stated that the margin of error in forensic alcohol measurements was at least plus or minus 10% and that in the region of .09 and .10 BAC, such a margin of error would translate to plus or minus 0.01 blood alcohol percentage units.

Haag's report was admitted into evidence at the administrative hearing. The ALJ did not comment on Haag's statement that the margin of error in any blood or breath test was at least 10%. However, the ALJ did find that the police department had established that the Breath Intoxilyzer was working properly both before and after the test. The ALJ stated that he did not consider the extrapolation evidence provided by Haag because section 28–694 required him to consider the Breath Intoxilyzer Test result, not Isbell's BAC when he was driving. The ALJ sustained the suspension of Isbell's driver's license.

a. *Extrapolation.*

■ The ALJ correctly disregarded the extrapolation evidence presented by Haag because section 28–694 requires that a driver's BAC be .10 or more at the time of a test, not at the time he or she was driving. *State of Arizona v. Nance,* 165 Ariz. 286, 798 P.2d 1295 (1990); *Knapp v. Miller,* 165 Ariz. 527, 799 P.2d 868 (Ct.App.1990).

In *Nance,* the respondent was arrested for driving while intoxicated. He submitted to a breath test approximately one hour after his arrest, which resulted in a BAC of .110. The arresting officer served respondent with an order of suspension. Respondent requested an administrative hearing, in which the ALJ ordered his license suspended. Respondent moved for a rehearing, contending that the state was required to relate the BAC result back to the time of driving. On appeal the superior court vacated the order of suspension holding that *Desmond v. Superior Court,* 161 Ariz. 522, 779 P.2d 1261 (1989) required relation back evidence in suspension proceedings under section 28–694. The supreme court took jurisdiction of the special action because several cases pending in this court presented the same issue, one of those cases being the present case. The issue presented was whether the BAC test result must be "related back" to the time of driving for purposes of an administrative license suspension proceeding under section 28–694. The court viewed the issue as one of pure statutory construction. It held that the absence of the "at the time of the alleged offense" language in section 28–694 negates a requirement of "relation back" or extrapolation testimony prior to an administrative suspension. *Nance,* 165 Ariz. at 288, 798 P.2d at 1297. In contrast to section 28–692, section 28–694 provides for license suspension based on BAC at the time of the test, not BAC at the time of actual physical control of a vehicle.

In conclusion the court stated:

We believe A.R.S. § 28–694 mandates a bright-line rule that administrative suspensions are appropriate when the test

results in a reading of 0.10 or more at the time of the test, without regard to a projected reading at the time of driving. This interpretation rationally serves the legislative purpose of expeditiously suspending the licenses of those with test results of 0.10 or more, rather than waiting until and unless the driver is convicted of DUI.

*Id.* at 289, 798 P.2d at 1298. Therefore, the ALJ was not required to consider extrapolation evidence presented by Haag and Isbell's license was properly suspended based on his BAC at the time of testing.

Isbell relies on *Desmond* in arguing that extrapolation evidence to the time of driving is required. In *Nance,* the supreme court stated that in *Desmond* the court, "analyzed and applied the 'at the time of the alleged offense' language of A.R.S. § 28–692. We held that A.R.S. § 28–692 required 'relation back' evidence to establish a prima facie case of DUI ... By contrast, the absence of the 'at the time of the alleged offense' language in A.R.S. § 28–694 negates a requirement of 'relation back' testimony prior to an administrative suspension." 165 Ariz. at 288, 798 P.2d at 1297. Since the statute at issue here is section 28–694, which does not contain "at the time of the alleged offense" language found in section 28–692, Isbell's reliance on *Desmond* is misplaced.

b. *Constitutionality of section 28–694.*

■ Isbell next argues that if we determine that the ALJ is not required to consider extrapolation evidence, then we must determine that section 28–694 is unconstitutional because there is no rational basis between the ends, deterring persons from driving while intoxicated, and the means, suspending driver's licenses of persons with a specific BAC at the time of a test. Isbell argues that whatever may be the relationship between a driver's BAC while he is driving and the state's interest in deterring drunk driving, no reasonable relationship exists between a driver's BAC at

the time of a test and the state's interest in deterring drunk driving. He therefore contends that the statute violates both federal and state substantive due process clauses.

■ We disagree with Isbell. To comply with due process requirements, a statute must be reasonably related to a legitimate state interest. *Knapp,* 165 Ariz. at 530, 799 P.2d at 871. If a statute can serve any purpose related to public health, safety, or welfare, we will not question the wisdom of the legislature. *Id.*

In *Knapp,* we recently determined that section 28–694 was constitutional. *Id.* at 532, 799 P.2d at 873. We stated that the legislature's purpose in enacting section 28–694 was to provide an expeditious procedure for removing drunk drivers from the roads. That purpose is related to the state's compelling interest in removing intoxicated drivers from the roads because they pose a clear threat to the safety of the public. *Id.* at 531, 799 P.2d at 872. We found that the legislature could reasonably conclude that a driver who registers a BAC of .10 at the time of a test administered after his or her arrest for a section 28–692 violation presents sufficient danger to the public to justify license suspension, subject to the protection provided by the hearing procedure. *Id.* at 529–532, 799 P.2d at 870–873. We therefore conclude that section 28–694 is reasonably related to the legislative end of removing people who drink and drive from the roads.

■ Isbell also presents to us several hypothetical examples under which section 28–694 would be unconstitutional. We cannot construe section 28–694 as unconstitutional based on hypothetical examples which do not apply to this case. *See Babbitt v. Asta,* 25 Ariz.App. 547, 549, 545 P.2d 58, 60 (App.1976).

c. *Margin of error in forensic alcohol measurements.* *

■ Isbell next argues that the ALJ acted arbitrarily in sustaining the order of

* *See also Wieseler v. Prins,* 66 Ariz.Adv.Rep 40, Ariz. (Ct.App. 8/2/90) (A.R.S. § 28–694 does

not require the hearing officer to factor the inherent margin of error before determining

suspension because of Haag's statement concerning the 10% margin of error inherent in any forensic alcohol measurement. Isbell contends that because of this inherent error, his BAC could have been as low as 0.09 at the time of testing and thus less than the statutory minimum.

Appellee, the Department of Transportation, responds that the calibration reports it submitted at the administrative hearing provide sufficient evidence to support the ALJ's finding that the test results were accurately evaluated. *See Parker v. Watters Cattle Ranch*, 70 Ariz. 423, 222 P.2d 799 (1950) (industrial commission findings and award will be sustained if there is any competent evidence to support it.)

We agree with the department. Section 28-694 does not require that breath test results must be evaluated with one hundred percent accuracy. Instead, section 28-694(E) limits the scope of the administrative hearing to include whether "the test results were accurately evaluated." Section 28-694(E) also provides that the test results should be admitted on establishing the requirements of section 28-692.03. Section 28-692.03(C)(2) requires the director of the Department of Health Services to promulgate procedures for ensuring the accuracy of breath tests. Under R9-14-405(A)(3), the director has defined a ten percent margin of error as an acceptable accuracy limit for a breath testing device:

> Calibration checks of breath testing devices shall be performed under normal operating conditions and at an interval of at least every 100 subject tests or monthly, whichever is the greater period of time. However, calibration checks shall be performed at least quarterly irrespective of the number of subject tests. These checks shall indicate that the device is capable of determining the value of a known alcohol reference standard with an acceptable accuracy limit of ± 0.01% weight per volume or ± 10%, whichever is greater. A device performing outside this accuracy limit shall be removed from service until such time as repair or maintenance is performed and

whether the test result indicates that the person

the proper operation of the device is established. Collection devices used to provide preserved breath alcohol samples must be evaluated at least quarterly to assure proper sample collection.

The calibration checks performed on the breath testing device indicate that the machine was within the acceptable accuracy guidelines as promulgated by the director of the Department of Health Services. According to the calibration report for February 8, 1988, the breath testing device read 0.001 higher than the 0.10 control sample. The device was then adjusted. According to the calibration report for February 18, 1988, the device read 0.004 lower than the 0.10 control sample. No adjustments were made after that calibration report.

The Iowa Supreme Court has similarly interpreted its driver's license revocation statute. *Nugent v. Iowa Dep't of Transp.*, 390 N.W.2d 125 (1986). Based on the possible five percent margin of error inherent in any blood testing device, the driver in *Nugent* argued that his BAC could have been as low as 0.097 and thus below the statutory minimum. *Id.* at 127-128. The court rejected the driver's argument because the Iowa's driver's license suspension statute did not on its face require that the margin of error inherent be considered:

> Iowa Code section 321B.16 (1983) authorizes the DOT to revoke a person's license when *"the test results indicate ten hundredths or more* of one percent by weight of alcohol in the person's blood."* (Emphasis added.) Because this statutory language is precise and unambiguous, we give the language its plain meaning.... The statute thus grants the DOT power to revoke a person's license when *the test results show or reflect* a certain level of alcohol concentration in the blood. It does not require the DOT to prove the results are one hundred percent accurate, and the margin of error need not be considered.

*Id.* at 128 (citation omitted); *see Hrncir v. Comm'r of Pub. Safety*, 370 N.W.2d 444, 445 (Minn.Ct.App.1985) ("The [Minnesota implied consent] statute refers to test re-

had a blood alcohol level of .10 or more).

sults showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error"); *People v. Cancel,* 137 Misc.2d 260, 267, 520 N.Y.S.2d 509, 513 (1987) ("Here, the jury was clearly confronted with the issue of whether the breathalyzer reading, given the possibility that the margin of error came into play, was really .10, .099, or even .101. This court finds the jury's resolution of this issue against the defendant is amply supported by the other evidence in the case regarding the accuracy and reliability of the breathalyzer machine together with the above-mentioned eyewitness testimony of defendant's intoxication.").

Isbell relies on *Barcott v. State of Alaska,* 741 P.2d 226 (1987) in arguing that the ALJ should have considered the margin of error inherent in the breath testing equipment. Joseph Barcott's breath test indicated that his BAC was 0.10. *Id.* at 227. The control test performed immediately before Barcott took his breath test provided a reading of 0.001 percent higher than the control sample and the control test performed immediately after produced a reading of 0.006 percent lower than the control sample. *Id.* Based on the driver's right to procedural due process, the Alaska Supreme Court held that Barcott's driver's license could not be suspended on the basis of his breath test result. *Id.* at 229. The court reasoned that if the device measured 0.001 percent higher than it should have,

then Barcott's BAC would have been below 0.10, the statutory minimum. *Id.* In addition, the court noted that the ten percent margin of error inherent in any breath testing device could have reduced Barcott's BAC below the statutory minimum. *Id.* at n. 3.

There was no suggestion in *Barcott* that the Alaska legislature either anticipated or approved a ten percent margin of error in its breath testing devices. In contrast, here the director of the Department of Health Services has defined a breath testing device to be in proper operating condition if it includes as much as a 10% margin of error. *See* R9–14–405(A)(3).

Isbell also argues that Arizona should require, as other states have, that the operator of a breath testing device perform control tests immediately before and after the driver takes the breath test. Isbell's argument should be addressed to the Arizona Legislature, not to this court.

Based on the foregoing, we affirm.

EUBANK, P.J., and SHELLEY, J., concur.