**Vickie Sue HRNCIR, petitioner, Appellant,**

**v.**

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C5-85-109.**

Court of Appeals of Minnesota.

July 2, 1985.

Richard T. Wylie, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

### OPINION

POPOVICH, Chief Judge.

Appellant Vickie Sue Hrncir seeks review of the trial court's decision sustaining revocation of her driver's license because she produced a reading of .10 percent blood

alcohol content on an intoxilyzer. We affirm.

## FACTS

On August 30, 1984, appellant was arrested by a Minnesota State Trooper for driving while under the influence of alcohol in violation of Minn.Stat. § 169.121. Appellant was read the Minnesota Implied Consent Advisory and, after contacting an attorney, consented to take a breath test.

An intoxilyzer test was administered by the trooper, a certified intoxilyzer operator, at 3:18 a.m. The internal diagnostic airblank and calibration standard tests all fell within acceptable tolerances.

Petitioner provided two adequate samples of her breath for analysis. The first sample disclosed an alcohol concentration of .102 and a replicate reading of .102. The second sample resulted in a reading of .105 and a replicate reading of .108. The intoxilyzer indicated a reported value of .10 and a breath correlation of 97 percent.

Respondent Commissioner of Public Safety revoked appellant's driver's license pursuant to Minn.Stat. § 169.123, subd. 4 (1984). Appellant requested judicial review of the revocation. *See* Minn.Stat. § 169.-123, subd. 5c (1984).

At trial, appellant introduced a brochure prepared by the manufacturer of the Intoxilyzer 5000 which stated the machine's accuracy was "Better than plus or minus .01 percent BAC [blood alcohol concentration]." The manufacturer also stated the quality of the instrument's repeatability was "Better than plus or minus .01 percent BAC." Further, the Intoxilyzer measures and reports the alcohol concentration in a test sample of breath as the "percent Blood Alcohol Concentration" of the sample.

## ISSUE

Was the Commissioner of Public Safety required to prove an alcohol concentration of .10 plus any margin of error?

## ANALYSIS

Minn.Stat. § 169.123 (1984) does not require the Commissioner of Public Safety to prove an alcohol concentration of .10 within an alleged margin for potential error. *Schildgen v. Commissioner of Public Safety*, 363 N.W.2d 800, 801 (Minn.Ct.App. 1985); *Grund v. Commissioner of Public Safety*, 359 N.W.2d 652, 653 (Minn.Ct.App. 1984).

The statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error. Minn.Stat. § 169.123, subds. 4, 6(3) (1984). Here, the test results indicate a blood alcohol content of .10.

Appellant notes that, unlike the instant case which arises with an intoxilyzer, the earlier cases arose from tests given with a breathalyzer. Appellant in this case introduced at trial, without objection, a brochure which was prepared by the manufacturer of the intoxilyzer stating the accuracy of the intoxilyzer to be better than plus or minus 0.01 percent blood alcohol content. Because the brochure states a margin of error, the uncertainty of error present in *Schildgen* and *Grund* is missing. Those cases, however, did not rely on the uncertainty of the margin of error in the breathalyzer, and the evidence here does not change the analysis or the result in this matter.

## DECISION

The revocation of appellant's driving privileges under Minn.Stat. § 169.123 was appropriately sustained.

Affirmed.