**Martin Matthew NUGENT, Appellant,**

v.

**IOWA DEPARTMENT OF TRANSPORTATION,**
Appellee.

**No. 85–1077.**

Supreme Court of Iowa.

July 23, 1986.

Thomas W. Polking, of Wilcox, Polking, Gerken & Schwarzkopf, P.C., Jefferson, for appellant.

Thomas J. Miller, Atty. Gen., and Robert P. Ewald, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Plaintiff Martin Matthew Nugent appeals from district court's decision upholding revocation of his driver's license. We affirm.

Plaintiff was the driver of a car involved in a single vehicle, personal injury accident on March 27, 1984. After noting plaintiff's bloodshot eyes and the odor of his breath, a deputy sheriff requested that plaintiff submit to a blood-alcohol chemical test pursuant to our Implied Consent Law, Iowa Code chapter 321B. Plaintiff consented and the deputy escorted him to the hospital.

The testing indicated a blood-alcohol concentration of 0.102 in plaintiff's blood at the time of his car accident, an amount equal to or greater than the statutory maximum of 0.10. Plaintiff's license was revoked. *See* Iowa Code § 321B.16 (1983).

Plaintiff requested an administrative hearing pursuant to Iowa Code section 321B.26 to contest the revocation. At the hearing, the Iowa Department of Transportation (DOT) attempted to introduce evidence of the blood test results. Plaintiff lodged a lack-of-foundation objection, asserting the DOT had not shown it had followed Iowa Code section 321B.15 in obtaining the blood sample. Plaintiff also argued the DOT could not rely on the test results as a basis for revocation because the margin of error made it possible for the actual alcohol concentration in his blood to be below the statutory maximum.

The hearing officer agreed that the DOT failed to show a proper foundation for introduction of the test results and rescinded the revocation.

The DOT appealed and the agency reversed. It held the burden of proof was on plaintiff, and he had failed to show proper procedures had not been followed. Further, the agency rejected plaintiff's argument that the margin of error inherent in chemical testing must be considered in determining blood-alcohol levels.

Plaintiff sought judicial review by the district court pursuant to Iowa Code sections 321B.27 and 17A.19. That court affirmed the revocation. Plaintiff, appealing to this court, presents two issues for our review.

I. Plaintiff first argues the DOT failed to provide an adequate foundation for admission of the blood test results into evidence. Therefore, he argues the DOT may not rely on the results as a basis for revocation. Plaintiff focuses on the procedural requirements for obtaining a blood specimen contained in Iowa Code section 321B.15. That section provides:

Only a licensed physician, physician's assistant as defined in section 148C.1, subsection 6, medical technologist *or registered nurse, acting at the request of a peace officer* may withdraw body substances for the purpose of determining the alcoholic or drug content of the person's blood. However, any peace officer, using devices and methods approved by the commissioner of public safety, may take a specimen of a person's breath or urine for the purpose of determining the alcoholic or drug content of the person's blood. *Only new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions shall be used for drawing blood.* The person may have an independent chemical test or tests administered in addition to any administered at the direction of a peace officer. The failure or inability of the person to obtain an independent chemical test or tests does not preclude the admission in evidence of the results of the test or tests taken at the direction of the peace officer. Upon the request of the person who is tested, the results of the test or tests taken at the direction of the peace officer shall be made available to the person.

Iowa Code § 321B.15 (emphasis added).

Plaintiff contends the DOT failed to show the nurse withdrew the blood at the *written* request of the officer.[1] Moreover, he argues the record reflects no showing that the nurse used "new, originally factory wrapped, disposable syringes and needles, kept under strictly sanitary and sterile conditions." *Id.*

In an administrative proceeding the licensee has the burden to show he or she complied with "all lawful requirements for the retention of the license." *Id.* § 17A.18(3). Consequently, we recently have stated that the licensee has "the burden of proving that he [or she has] com-

plied with the implied consent law." *Heidemann v. Sweitzer*, 375 N.W.2d 665, 669 (Iowa 1985); *see McCrea v. Iowa Department of Transportation*, 336 N.W.2d 427, 429 (Iowa 1983).

In *Heidemann,* we discussed the evidentiary burdens involved under the implied consent law in the criminal and administrative contexts. We wrote:

> [I]n the criminal case the state had the burden to prove those foundational facts necessary for the admission of results of tests conducted pursuant to chapter 321B or proof that defendant refused testing. ...
>
> In contrast, in the license revocation proceedings Heidemann had the burden of proving that he had complied with the implied consent law in order to retain his operating privilege, and he therefore had the burden to prove his contention that the deputy sheriff had not satisfied procedural requirements of the implied consent law.

375 N.W.2d at 668–69 (citations omitted).

■ Similarly, although the State would have the burden to show compliance with section 321B.15 in order to introduce blood test results in a criminal case,[2] *Heidemann* clearly indicates the DOT does not bear the same burden in license revocation proceedings. Here, as in *Heidemann,* plaintiff "had the burden to prove his contention that the [DOT] had not satisfied procedural requirements of the implied consent law." *Id.* at 669. The agency was correct in finding plaintiff failed to meet that burden on the record presented here.

II. Plaintiff next argues the DOT failed to show he had an alcohol concentration of 0.10 or more in his blood at the time of the accident. The test results indicated plaintiff had a 0.102 alcohol concentration in his blood. According to plaintiff's evidence, however, it was possible for the alcohol concentration in his blood to be some

---

**1.** Section 321B.15 no longer requires that the officer present a written request to the nurse to withdraw blood. *See* 1982 Iowa Acts ch. 1167, § 17. Thus, plaintiff's argument is without merit. ■

**2.** *See State v. Stoneking,* 379 N.W.2d 352, 354 (Iowa 1985); *State v. Schlemme,* 301 N.W.2d 721, 722 (Iowa 1981).

amount between 0.097 and 0.107. Therefore, he argues the DOT was without a basis to revoke his license under section 321B.16.

Plaintiff relies on several criminal, not administrative, cases from other jurisdictions. Those decisions hold the state must show a blood-alcohol concentration that takes into account the variance or margin of error in order to support a criminal conviction. *See, e.g., People v. Campos,* 138 Cal.App.3d Supp. 1, 5–7, 188 Cal.Rptr. 366, 368–70 (Super.Ct.1982); *State v. Boehmer,* 1 Hawaii App. 44, 46–48, 613 P.2d 916, 918–19 (1980); *State v. Bjornsen,* 201 Neb. 709, 710–11, 271 N.W.2d 839, 840 (1978); *see also State v. Keller,* 36 Wash. App. 110, 112–13, 672 P.2d 412, 413–14 (1983). *But see State v. Rucker,* 297 A.2d 400, 402–03 (Del.Super.Ct.1972) (The court held that under the express terms of the statute, the test result reading was conclusive and the alleged margin of error need not be considered in determining whether the OWI charge was supported.). Although the issue presented here does arise in the criminal context as shown by the above cases, different concerns are addressed in civil administrative proceedings. Thus, the criminal cases cited by plaintiff are not controlling in this situation.

Iowa Code section 321B.16 (1983) authorizes the DOT to revoke a person's license when "the *test results indicate ten hundredths or more* of one percent by weight of alcohol in the person's blood." (Emphasis added.) Because this statutory language is precise and unambiguous, we give the language its plain meaning. *LeMars Mutual Insurance Co. v. Bonnecroy,* 304 N.W.2d 422, 424 (Iowa 1981). The statute thus grants the DOT power to revoke a person's license when the test results show or reflect a certain level of alcohol concentration in the blood. It does not require the DOT to prove the results are one hundred percent accurate, and the margin of error need not be considered. *See Hrncir v. Commissioner of Public Safety,* 370 N.W.2d 444, 445 (Minn.Ct.App. 1985).

In *Hrncir,* the Minnesota court stated:
Minn.Stat. § 169.123 (1984) does not require the Commissioner of Public Safety to prove an alcohol concentration of .10 within an alleged margin for potential error.

The statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error. Here, the test results indicate a blood alcohol content of .10.

*Id.* (citations omitted); *see Schlidgen v. Commissioner of Public Safety,* 363 N.W.2d 800, 801 (Minn.Ct.App.1985) ("Under Minn.Stat. § 169.123 ... the Commissioner must revoke a person's license when 'the test results indicate an alcohol concentration of .10 or more.' The statute clearly requires a concentration of .10—not .10 plus or minus an error factor."). The Minnesota statute contains language similar to our own and we find the Minnesota court's reasoning persuasive.

The agency found that the test results indicated plaintiff had a 0.102 alcohol concentration in his blood. Its finding was supported by substantial evidence and therefore we affirm the revocation. *See McCrea,* 336 N.W.2d at 429; Iowa Code § 17A.19(8)(f).

AFFIRMED.