805 P.2d 1044

**Randall Davis WIESELER, Petitioner–Appellant,**

v.

**Lee A. PRINS, Director of the Motor Vehicle Division, Department of Transportation, and State of Arizona, Respondents–Appellees.**

**No. 1 CA–CV 88–600.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 2, 1990.

As Corrected Aug. 21, 1990.

Review Denied March 5, 1991.

Gary L. Rohlwing, Arla H. Blasingim, Glendale, for petitioner-appellant.

Robert K. Corbin, Atty. Gen. by Janis M. Haug, Asst. Atty. Gen., Phoenix, for respondents-appellees.

## OPINION

KLEINSCHMIDT, Judge.

Randall Wieseler's driver's license was suspended for driving when a breath test indicated that his blood alcohol concentration exceeded .10 percent, a violation of A.R.S. section 28–692. The test has a margin of error of plus or minus 10 percent. Wieseler contends that he cannot be in violation of the statute unless the breath test reads at least .110 percent to account for this margin of error. We disagree.

The case, which presents other issues, arose as follows. In March of 1988, Glendale Police Officer James Reynolds responded to a two-car accident. When he arrived at the scene, he spoke with Officer Bruce McWharter, who was already investigating the accident. McWharter told Reynolds that another officer, William Kelsey, had seen the accident and had told him that Randall Wieseler had been driving one of the vehicles involved. Kelsey was administering field sobriety tests to the other driver, and McWharter, who had smelled alcohol on the petitioner's breath, asked Reynolds to do the same with the petitioner.

The petitioner admitted to Reynolds that he had been drinking. Reynolds could smell alcohol on the petitioner's breath and noticed that his eyes were a little watery. Based on the field sobriety tests, Reynolds determined that petitioner was under the influence of alcohol. The petitioner was arrested and taken to the police station. He was advised of his rights and the implied consent warning, and he agreed to submit to a breath test.

Reynolds administered the test using an Intoxilyzer 4011A which produced a reading of .103 percent blood alcohol concentration. The machine had been inspected and certified as required by law, and Reynolds, a certified operator, conducted the test properly. *See* A.R.S. § 28–692.03(A). The petitioner was given the breath sample

which had been tested by Reynolds. This sample was submitted to an independent testing laboratory and it produced a reading of .098 percent blood alcohol content.

Reynolds filed an administrative affidavit with the Arizona Department of Transportation pursuant to A.R.S. section 28–694 alleging that the petitioner had submitted to a breath test which indicated a blood alcohol content in excess of .10 percent. A hearing was held to determine whether petitioner's license should be suspended. The only witness to testify for the department of transportation was Officer Reynolds. The petitioner introduced an affidavit from a medical technologist who performed the independent test on the breath sample. The technologist stated that the breath testing device has an inherent error factor of plus or minus 10 percent, so that it was equally probable that the petitioner's blood alcohol was below .10 as it was .10 or above. She also stated that the test result obtained by Officer Reynolds did not reliably establish the petitioner's true blood alcohol concentration at .10 percent or above. She based this conclusion on the independent test result and the inherent margin of error.

The hearing officer ultimately issued his findings and conclusions and an order suspending the petitioner's license. On special action appeal to the superior court the order of the hearing officer was affirmed.

## THE BLOOD ALCOHOL TEST

The error factor of plus or minus 10 percent in the results reported by any of the accepted breath testing devices, including the Intoxilyzer 4011A, is conceded. *See* Ariz. Admin. Code, Title 9, §§ R9–14–404(G), R9–14–405(A)(3). The question is whether the hearing officer was *compelled*, in view of the 10 percent margin of error, to find that unless the test showed a blood alcohol level that was 10 percent higher than .10 percent, which would be .110 percent, the state had not carried its burden of proof.

The department of transportation is authorized to suspend a license to drive when a blood alcohol test result *"indicate[s] 0.10*

or more alcohol concentration in the person's blood or breath." A.R.S. § 28–694(A) (emphasis added). The scope of the hearing under A.R.S. section 28–694 is limited, requiring the hearing officer to determine, among other things, "whether a test was taken, the results of which *indicated* an alcohol concentration of 0.10 or more." A.R.S. § 28–694(E) (emphasis added).

No Arizona case addresses the issue the petitioner raises. There are, however, two cases from other states which we consider to be particularly instructive. The most recent is *Nugent v. Iowa Department of Transportation,* 390 N.W.2d 125 (Iowa 1986), which was an appeal from a decision revoking a driver's license. The appellant's blood alcohol reading was .102 which exceeded the statutory maximum of .10. He argued that the state could not rely on the test for blood alcohol because it had a margin of error that made it possible for the actual alcohol concentration in his blood to be below the statutory maximum even though the reading exceeded .10. The Supreme Court of Iowa rejected this argument, and in doing so drew a distinction between the criminal cases the appellant cited and civil administrative proceedings. It pointed out that the Iowa statute authorized the revocation of a license when "the *test results indicate ten hundredths or more* of one percent by weight of alcohol in the person's blood." *Id.* at 128. This, it said, was clear and unambiguous. The statute did not require the state to prove that the test results were totally accurate, and the margin of error need not be considered. *Id.*

The second case to which we refer, on which the court in *Nugent* also relied, is *Hrncir v. Commissioner of Public Safety,* 370 N.W.2d 444 (Minn.Ct.App.1985). There, the same question that is presented in *Nugent* and in this case was resolved with the following observation:

The statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error. Minn.Stat. § 169.123, subds. 4, 6(3) (1984). Here, the test results indicate a blood alcohol content of .10.

*Id.* at 445. The Minnesota court concluded that the margin of error need not be taken into account. *Id.*

■ We find the reasoning in *Nugent* and *Hrncir*, which construes statutory language similar to the language in our own license revocation statute, persuasive, and we hold that A.R.S. section 28–694 does not require the hearing officer to factor in the inherent margin of error before determining whether the test result indicates that the person had a blood alcohol level of .10 or more. Presumably, the legislature was aware that breath testing for blood alcohol concentration had an error factor. If it had intended to require the hearing officer to factor in the margin of error, it could have easily included such a requirement in the statute. *See, e.g.,* I.C. § 321J.12 (Supp. 1990) (Iowa's license revocation statute was amended in 1986, after *Nugent,* and now requires the hearing officer to factor in the established margin of error inherent in the testing device utilized).

The petitioner relies on *Barcott v. Alaska Department of Public Safety,* 741 P.2d 226 (Alaska 1987), in which the Supreme Court of Alaska considered this very same question. In *Barcott,* the court relied on *Champion v. Department of Public Safety,* 721 P.2d 131 (Alaska 1986), for the premise that the same procedural safeguards which apply in criminal prosecutions for driving while intoxicated also apply in civil driver's license revocation proceedings for the same offense. The *Barcott* court held that due process required consideration of the inherent error factor in the breath testing procedure and that the margin of error must be taken into account.

■ Our courts have not accorded the same procedural safeguards to license revocation proceedings as does the Supreme Court of Alaska. In *Geer v. Ordway,* 156 Ariz. 588, 754 P.2d 315 (App.1988), Division Two of this court held that the standard of proof in license revocation proceedings was by the preponderance of the evidence. The court distinguished between criminal and civil proceedings and concluded that proceedings for the suspension of a driver's license did not involve a fundamental liberty interest. Accordingly, we reject the holding in *Barcott* and follow *Nugent* and *Hrncir.*

■ The petitioner's final argument is that the hearing officer acted arbitrarily and capriciously by rejecting evidence presented by petitioner that an independent test of the breath sample indicated a test result of less than .10 percent. We have reviewed the record from the hearing and find that the hearing officer did consider the independent test result, but found it to be unpersuasive. Finding of Fact X reads:

> Exhibit 4 [Affidavit of Nancy McAllister] has been *considered* by this Hearing Officer, and nothing contained therein indicates that the testing equipment used was not operating properly, or that the test results were improperly evaluated.

An administrative officer has the prerogative to resolve conflicting evidence. *Phelps v. Industrial Comm'n,* 155 Ariz. 501, 747 P.2d 1200 (1987). In this instance there was evidence of the petitioner's blood alcohol concentration presented by both the state and the petitioner. The hearing officer was not compelled to accept the petitioner's evidence.

Finally, on this point, the petitioner argues that even though the hearing officer stated in his finding of fact that he had considered the margin of error, he did not give this evidence proper weight and consideration. Petitioner asserts that the inherent margin of error alone created sufficient reasonable doubt that petitioner's blood alcohol content was not actually above the level necessary to invoke the statutory presumption of intoxication. We see this as simply another way of insisting that the hearing officer must take the margin of error into account.

## HEARSAY EVIDENCE

Petitioner's next argument concerns the introduction of double hearsay to prove that the petitioner was driving the vehicle at the time he was arrested. In this case, Officer Reynolds testified that Officer McWharter had told him that petitioner had

been driving one of the vehicles involved in the accident. McWharter, in turn, had received this information from Kelsey, the officer who witnessed the accident.

■ Reliable hearsay is admissable in administrative proceedings and may even be the only support for an administrative decision. *Begay v. Arizona Dep't of Economic Sec.*, 128 Ariz. 407, 626 P.2d 137 (App.1981). The petitioner argues, however, that double hearsay is not properly admissible because it is per se unreliable under established standards. He cites no case in point.

The state argues that the standard is whether the hearsay sought to be introduced is reliable. *See, e.g., Plowman v. Arizona State Liquor Bd.*, 152 Ariz. 331, 732 P.2d 222 (App.1986); *Racine v. State Dep't of Transp. & Pub. Facilities*, 663 P.2d 555 (Alaska 1983); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). We agree.

■ The Arizona cases dealing with the use of hearsay evidence in administrative hearings have focused on the reliability of the evidence. Hearsay evidence is considered reliable where the circumstances tend to establish that the evidence offered is trustworthy. *Reynolds Metals Co. v. Industrial Comm'n*, 98 Ariz. 97, 102, 402 P.2d 414, 417 (1965). In *Begay*, the court, quoting *Reynolds*, said that hearsay could be relied upon by the hearing officer if it is of the type that "reasonable men are accustomed to rely [on] in serious affairs." *Begay*, 128 Ariz. at 410, 626 P.2d at 140. Generally, hearsay is unreliable when:

> [T]he speaker is not identified, when no foundation for the speaker's knowledge is given, or when the place, date and time, and identity of others present is unknown or not disclosed.

*Plowman*, 152 Ariz. at 337, 732 P.2d at 228. Here, the petitioner knew the identity of the speaker and Officer Reynolds was able to lay a sufficient foundation for the basis of the speaker's knowledge. The petitioner failed to present any evidence to show that the officer's testimony was untrustworthy or otherwise unreliable. He did not deny or contradict the officer's testimony that he, the petitioner, was driving a vehicle at the time of the accident. While the petitioner did not have the burden of proof in a civil proceeding of this nature, the hearing officer was entitled to take that into account. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 822 (1976) (failure to contest an assertion can be considered evidence of acquiescence if it would have been natural under the circumstances to object).

The petitioner further claims that even though the identities of the other two officers were known, they were not present at the hearing and thus petitioner was denied the opportunity to cross-examine them. *See Avenente v. Smouse*, 1 Ariz.App. 24, 398 P.2d 932 (1965). He insists that it was fundamentally unfair and a violation of his constitutional rights. We find no merit in this argument. The hearing officer has subpoena power and can, upon the request of a party or on his own initiative require the attendance of any witness. A.R.S. §§ 28–446(B), 28–694(D). There is no showing that the defendant sought the appearance of these witnesses.

For the foregoing reasons, we affirm the decision of the hearing officer suspending the petitioner's license.

CLABORNE, P.J., and EHRLICH, J., concur.