ROBERT GARY NELSON

v.

COMMONWEALTH OF VIRGINIA

No. 1275-91-3

Decided April 20, 1993

COUNSEL

Gray Robinson (Jackson & Robinson, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Robert Gary Nelson was convicted of operating a motor vehicle while having a blood alcohol concentration of .10 percent in violation of Code § 18.2-266(i). On appeal, Nelson contends that the trial judge misinterpreted Code § 18.2-266(i) by holding (1) that it prohibits driving after consuming sufficient alcohol to register .10 percent or more as indicated by a subsequently administered test, and (2) that a breathalyzer measurement of .10 percent is conclusive proof of guilt. We affirm the conviction.

A statement of facts established that on January 11, 1991, at 11:57 p.m., a police officer stopped Nelson while Nelson was operating an automobile in Bristol, Virginia. After the officer stopped and arrested Nelson, Nelson elected to take a breathalyzer test pursuant to Code § 18.2-268. The test was administered at 12:53 a.m. and showed a blood alcohol content of .10 percent. Nelson was charged with driving while having a blood concentration of .10 percent or more of alcohol in violation of Code § 18.2-266(i). Nelson was also charged with possession of a radar detector, which is not at issue here.

When this matter was heard at a bench trial in the circuit court on an appeal from the district court, Nelson contended that the breathalyzer test result did not accurately reflect his blood alcohol concentration at the time of the alleged offense. The statement of facts established the following:

> [Nelson] presented the testimony of Dr. Joseph M. Ballo, a qualified forensic pathologist, who provided expert testimony in the area of blood and breath alcohol concentration and testing. Dr.

Ballo testified that the subject breathalyzer operates on the basic assumption founded upon Henry's Law that there is a constant ratio between the weight of alcohol per volume of breath and the weight of alcohol per volume of blood of 2100 to 1. Dr. Ballo testified that while this ratio is an accurate average for the population as a whole, the ratio varies up to plus or minus 17% from individual to individual. Dr. Ballo cited a recent study of 65 Virginia State Troopers in which the breath to blood ratio of the persons tested varied from a low of approximately 1700:1 to a high of approximately 2500:1. Dr. Ballo concluded that [Nelson's] breathalyzer test result of .10% indicated that [Nelson's] actual blood alcohol concentration could have been as much as 17% below or above .10% by weight by volume, depending upon [Nelson's] actual breath to blood ratio. [Nelson's] actual breath to blood ratio was unknown. Dr. Ballo's testimony was uncontradicted.

Nonetheless, the trial judge convicted Nelson.

■ Code § 18.2-266 forbids ''any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.10 percent or more by weight by volume as indicated by a chemical test administered in accordance with the provisions of Code § 18.268.'' In applying the statute, this Court has stated that the relevant inquiry must be ''whether *at the time [Nelson] was driving* his blood alcohol concentration was at least .10 percent as measured by a subsequently administered chemical test.'' *Davis v. Commonwealth*, 8 Va. App. 291, 298, 381 S.E.2d 11, 15 (1989). Under Code § 18.2-266(i), the results of a chemical test showing that the blood alcohol concentration was .10 percent or more ''creates a rebuttable presumption that the measurement accurately reflects the blood alcohol concentration at the time of driving.'' *Id.* (footnote omitted).

Nothing in the trial judge's order is inconsistent with Code § 18.2-266 or the *Davis* holding. The undisputed evidence proved that Nelson was operating the automobile; that a breathalyzer test was administered in accordance with the provisions of Code § 18.2-268; that the breathalyzer test results indicated a blood alcohol concentration of .10 percent; and that Nelson offered rebuttal evidence. On this record, we cannot conclude that the trial judge used the wrong standard in finding Nelson guilty of violating Code § 18.2-266(i).

Nelson contends that the trial judge erroneously disregarded the evidence of the margin of error inherent in the breathalyzer test and concluded that the test result was conclusive proof of his guilt. We disagree with Nelson's arguments that the trial judge ignored his evidence and that his evidence was sufficient to rebut the *Davis* presumption. In essence, the issue is whether the trial judge failed to take into account the margin of error in a .10 percent reading from a properly operated and properly functioning breathalyzer.

Nelson's evidence tended to prove the existence of a general margin of error in breathalyzer test results. However, Code § 18.2-266(i) on its face does not require a consideration of the margin of error inherent in breathalyzer tests.[1] "The statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error." *Hrncir v. Commissioner of Public Safety*, 370 N.W.2d 444, 445 (Minn. Ct. App. 1985). We will not assume that the General Assembly was ignorant of a fairly basic principle that many measuring devices have some margin of error. Presumably, the General Assembly was aware that to the extent breathalyzer testing for blood alcohol concentration relies upon results from a device, the test results contain an inherent error factor. *See Wieseler v. Prins,* 805 P.2d 1044, 1047 (Ariz. Ct. App. 1990).

Our decision today does not preclude a defendant from contesting the reliability of blood alcohol concentration test results by proving in an appropriate case that the margin of error of a particular device was in excess of the margin deemed scientifically acceptable. However, merely proving the margin of error in a particular breathalyzer test, without more, does not as a matter of law, negate its reliability. *See* Lattarulo v. State, 401 S.E.2d 516, 519 (Ga.) *cert. denied,* 112 S. Ct. 86 (1991). Proof that an inherent margin of error exists in breathalyzer tests is not sufficient evidence to overcome the presumption that the measurement of .10 percent or more blood alcohol concentration accurately reflects the blood alcohol concentration at the time of driving.

---

[1] Although decisions from other states with analogous statutes vary, we find persuasive the decisions in *Wieseler v. Prins*, 805 P.2d 1044, 1047 (Ariz. Ct. App. 1990); *State v. Rucker,* 297 A.2d 400, 402-03 (Del. 1972); *Nugent v. Iowa Dep't of Transp.,* 390 N.W.2d 125, 128 (Iowa 1986); *Loxtercamp v. Commissioner of Public Safety,* 383 N.W.2d 335, 337 (Minn. Ct. App. 1986); *State, Dep't of Motor Vehicles & Public Safety v. Rowland,* 814 P.2d 80, 83 (Nev. 1991).

We find no basis upon which to conclude that the trial judge held that the breathalyzer measurement of .10 percent was conclusive proof of guilt. The record demonstrates that the trial judge recognized that the evidence of the margin of error did not rebut the *Davis* presumption. The trial judge "assume[d] the General Assembly was aware of the process used to convert the breath analysis to a blood alcohol concentration when they enacted the legislation permitting use of the breath test." That statement evidences recognition that margin of error was an issue and "[u]nless rebutted . . ., [breathalyzer] test results are sufficient to establish the blood alcohol concentration at the time of driving." *Davis*, 8 Va. App. at 300, 381 S.E.2d at 16. Accordingly, we conclude that Nelson's evidence did not as a matter of law rebut the presumption, and we affirm the conviction.

*Affirmed.*

Baker, J., and Coleman, J., concurred.