924 P.2d 192

**Richard LARA, Respondent–Appellant,**

**v.**

**Irwin TANAKA, Administrative Director of the Courts, State of Hawaiʻi, Petitioner–Appellee.**

**No. 17191.**

Supreme Court of Hawaiʻi.

Sept. 18, 1996.

Girard D. Lau, Deputy Attorney General, on the brief for petitioner.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Petitioner–Appellee Administrative Director of the Courts Irwin Tanaka (Petitioner) appeals by writ of certiorari from a decision of the Intermediate Court of Appeals (ICA) reversing the district court's May 20, 1993 Decision and Order Affirming Administrative Revocation of Respondent–Appellant Richard Lara's (Respondent) driver's license pursuant to Hawai'i Revised Statutes (HRS) chapter 286, Part XIV (1993). We reverse. We also, pursuant to Rule 2(a) of the Rules of the Intermediate Court of Appeals, direct that an order depublishing the ICA's October 20, 1995 opinion be filed concurrently with this opinion.

## I. BACKGROUND

On January 29, 1993, Respondent was arrested on a charge of driving under the influence of intoxicating liquor (DUI). Police officer Robert Lau observed Respondent "swerving ... [and] weaving" while driving westbound on the H–1 highway on O'ahu at approximately 10:20 p.m. After Respondent's vehicle crossed the solid white line marking the right shoulder, Officer Lau pulled him over. The officer decided to administer a field sobriety test after speaking with Respondent for five to ten minutes and detecting a "moderate odor" of alcohol. When Respondent failed to adequately perform on the test, he was arrested and taken to a police station. An intoxilyzer test measured his blood alcohol concentration (BAC) at 0.107 percent.

On February 4, 1993, pursuant to HRS § 286–258(d)(3),[1] Respondent's license was revoked by an Administrative Review Decision of the Director. Respondent sought administrative review. The decision was affirmed by an Administrative Driver's License Revocation Office (ADLRO) hearing officer on March 11, 1993, pursuant to HRS § 286–259(e)(3).[2] At that hearing, Honolulu Police Department criminalist Judith Christiansen testified that the intoxilyzer machine had a margin of error of 0.01 percent. Affirming the Director's administrative revocation, the hearing officer made the following conclusions of law:

1. There existed reasonable suspicion for Arresting Officer to have stopped the motor vehicle driven by Arrestee.

2. Arresting Officer had probable cause to believe that the Arrestee drove, operated, or was in actual physical control of the

---

1. At the time of Respondent's arrest, HRS § 286–258(d)(3) provided that:

(d) The director shall administratively revoke the arrestee's driver's license if the director determines that:

...

(3) The evidence proves by a preponderance that the arrestee rove, operated or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of 0.10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

HRS § 286–259(d)(3) (1993). The legislature has since lowered the BAC to 0.08. *See* HRS § 286–259(d)(3) (Supp. 1995).

2. Until its recent amendment, HRS § 286–259(e)(3) provided that, on administrative review of a driver's license revocation:

(e) The director shall affirm the administrative revocation only if the director determines that:

...

(3) The evidence proves by a preponderance that the arrestee drove, operated or was in actual physical control of the motor vehicle while under the influence of intoxicating liquor or while having a blood alcohol concentration of .10 or more or that the arrestee refused to submit to a breath or blood test after being informed of the sanctions of this part.

HRS § 286–259(e)(3) (1993).

motor vehicle while under the influence of intoxicating liquor.

3. The Arrestee had a blood alcohol level of .10% or more.

ICA Opinion at 9.

Respondent appealed the hearing officer's decision to district court, which affirmed on May 20, 1993. Respondent appealed. On October 20, 1995, in a published ópinion, the ICA reversed the district court on the sole ground that, because Respondent's BAC was within the margin of error of the intoxilyzer, the evidence could not support the finding by a preponderance that Respondent met the statutory requirement for DUI. Petitioner's Application for Writ of Certiorari was granted by this Court on November 13, 1995.

## II. DISCUSSION

HRS § 286–259(e)(3) provides in pertinent part that the administrative revocation of a driver's license shall be affirmed following a hearing at which "[t]he evidence proves by a preponderance that the arrestee drove, operated, or was in actual physical control of the motor vehicle ... while having a blood alcohol concentration of .10 or more[.]" In State v. Boehmer, 1 Haw.App. 44, 48, 613 P.2d 916, 919 (1980), the ICA held that in a criminal prosecution for DUI under HRS § 291–4,[3] a BAC test result that does not exceed the legal limit by more than the margin of error of the measuring device is insufficient, as a matter of law, to prove beyond a reasonable doubt that a driver's actual BAC exceeded the legal limit. This appeal raises the question of the significance of that margin of error in light of the State's burden in a license revocation case of proving an arrestee's BAC level by a preponderance of the evidence.

■ When faced with an issue of statutory interpretation, "[o]ur primary duty is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language of the statute itself." Ing v. Acceptance Ins. Co., 76 Hawai'i 266, 270, 874 P.2d 1091, 1095 (1994). In a number of other jurisdictions, courts have found that the legislature intended that licenses be suspended or revoked if drivers' BAC tests produced readings above the legal limit, irrespective of the margin of error, because the statutory language provided for revocation based on "test results." See, e.g., Wieseler v. Prins, 167 Ariz. 223, 805 P.2d 1044, 1046 (App.1990), review denied (1991) (margin of error did not need to be considered because A.R.S. § 28–694(A) authorized license suspension when "a blood alcohol test result 'indicate[d] 0.10 or more alcohol concentration in the person's blood or breath.'"); Nugent v. Iowa Dep't of Transp., 390 N.W.2d 125, 128 (Iowa 1986) (margin of error did not need to be considered because Iowa Code § 321B.16 authorized license revocation "when 'the test results indicate[d] ten hundredths or more of one percent by weight of alcohol in the person's blood.'" (Emphasis in the original.)); Loxtercamp v. Commissioner of Pub. Safety, 383 N.W.2d 335, 336–37 (Minn.Ct.App.), review denied (1986) (margin of error did not need to be considered because Minn.Stat. § 169.123, subd. 4 required license revocation "when 'the test results indicate[d] an alcohol concentration of .10 or more.'").

■ HRS §§ 286–258(d)(3) and 286–259(e)(3) do not refer to "test results" but require proof that "the arrestee drove, operated, or was in actual physical control of the motor vehicle ... while having a [BAC] of 0.10 or more[.]" This language is similar to that used by the legislature in HRS § 291–4(a)(2), the criminal DUI statute, which requires proof of a driver's actual BAC. See supra note 3; Boehmer, 1 Haw.App. 44, 613 P.2d 916.[4] Moreover, nothing in the legislative history of the Administrative Revocation

---

**3.** HRS § 291–4(a)(2) provides that:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:

. . .

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08

or more grams of alcohol per two hundred ten liters of breath.

HRS § 291–4(a)(2) (Supp. 1995).

**4.** Since Boehmer was decided, HRS § 291–4 has been amended numerous times. Nothing in the language or legislative history of any of the amendments, however, indicates that the legislature intended to legislatively overrule Boehmer.

Program indicates that the legislature intended that license revocation be based on the BAC test result alone; rather than on a driver's actual BAC. Therefore, we agree with the ICA that the margin of error is a relevant factor to be weighed in considering the evidence.

Petitioner argues, however, that the ICA erred in finding that the preponderance of evidence standard was not met in this case. We agree. There is no dispute over Respondent's 0.107 test result or over the intoxilyzer test's 0.01 margin of error. The ICA thus correctly noted that "his BAC level could have been anywhere from 0.097% to 0.117%." ICA Opinion at 16 (footnote omitted). The court continued:

> A margin of error which allows for the *equal inference* that Petitioner's BAC could be below *or* above the 0.10% threshold would not allow the factfinder to find that [Respondent's] BAC level was *probably* at or above 0.10% rather than below 0.10%. At best, such evidence is equivocal, rather than preponderant.

*Id.* (first emphasis added). But in order to administratively revoke a driver's license, proof beyond a reasonable doubt is not required. Proof by a preponderance of the evidence requires only "evidence which is of greater weight or more convincing than the evidence which as a whole shows that the fact sought to be proved is more probable than not." Black's Law Dictionary 1182 (6th ed. 1990) We agree with the holding in *Boehmer* that a statistically significant possibility that a driver's actual BAC is below the legal limit does not overcome the presumption of innocence by proof beyond a reasonable doubt. But we cannot conclude that, because of that possibility, it is impossible to prove by a preponderance of the evidence that a driver's actual BAC exceeded the legal limit. *But cf. Haynes v. State*, 865 P.2d 753, 756 (Alaska 1993) ("a chemical breath test reading or result which may be reduced below the [proscribed] level ... by applying the margin of error inherent in the particular test used, cannot serve as the basis for a license revocation under AS 28.15.165(c)").

The margin of error delineates a *range* representing Respondent's actual blood alcohol concentration. The ICA therefore erred in asserting that there is an "equal inference that [Respondent's] BAC could be below *or* above the 0.10% threshold[.]" ICA Opinion at 16 (original emphasis). Respondent's BAC was tested at 0.107 percent. Assuming the maximum margin of error in his favor, his blood alcohol level at the time the test was administered could have been 0.097 percent, or a bare three one/thousandths below the legal limit. At the other end of the scale, Respondent's actual BAC may have been as high as 0.117 percent, seventeen one/thousandths over the limit. Clearly, the ADLRO hearing officer could conclude by a preponderance of the evidence in this case, including the margin of error, that it was more probable than not that Respondent "had a blood alcohol content of .10% or more."

On appeal to the ICA, Respondent also raised the following points: 1) HRS chapter 286, Part XIV violates the doctrine of separation of powers by placing the ADLRO in the judiciary rather than the executive branch of government; 2) the intoxilyzer's supervisor's sworn statement failed to meet the requirements for admission into evidence; 3) the record failed to establish probable cause to believe that Respondent drove, operated, or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor; 4) the hearing officer wrongfully placed the burden of proof on Respondent to show that his actual BAC was below 0.10 percent; and 5) the Director erred by denying Respondent's request to subpoena the transporting officer.

We note that the Petition for Writ of Certiorari raised only the issue regarding margin of error; no cross-petition was filed by Respondent. Nevertheless, the first two issues were fully considered and rejected in *Biscoe v. Tanaka*, 76 Hawai'i 380, 383–84, 878 P.2d 719, 722–23 (1994) (placement of the Administrative Revocation Program in the judiciary does not violate separation of powers), and *Park v. Tanaka*, 75 Haw. 271, 275–79, 859 P.2d 917, 920–21 (1993) (intoxilyzer supervisor's standard statement form fulfills statutory requirements). We hold that there is no merit in Respondent's remaining claims concerning lack of probable cause, improper

placement of the burden of proof, or failure to subpoena the transporting officer.

### III. CONCLUSION

For the foregoing reasons, we reverse the ICA's judgment of October 20, 1995, and reinstate the district court's May 20, 1993 Decision and Order Affirming Administrative Revocation.