Hillie CHAMPION, Jr., Appellant,

v.

DEPARTMENT OF PUBLIC SAFETY,
State of Alaska, Appellee.

No. S-868.

Supreme Court of Alaska.

June 20, 1986.

Peter F. Mysing, Kenai, and Linda MacLean, Anchorage, for appellant.

Deborah Howard and Judith Andress, Asst. Attys. Gen., Anchorage, Harold M. Brown, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MATTHEWS, Justice.

On January 7, 1984, Hillie Champion, Jr. was stopped in the area of 6th Avenue and Medfra Street in Anchorage after a police officer saw him driving erratically. When he failed a field sobriety test Champion was arrested for operating a motor vehicle while intoxicated. He was taken to the police department and given a breathalyzer test using an Intoximeter 3000, which showed a .20% breath alcohol concentration (i.e., .20 grams alcohol per 210 liters of breath). Although the machine had the capability of preserving a breath sample, a sample was not preserved, nor was Champion offered a blood test to enable him to independently verify the test results. Champion's driver's license was revoked for ninety days by the Department of Public Safety.[1]

---

1. Champion's license was revoked pursuant to AS 28.15.165(c), which provides:

Upon receipt of a sworn report of a law enforcement officer that a chemical test under AS 28.35.031(a) produced a result described in AS 28.35.030(a)(2) or that a person refused to submit to a chemical test under AS 28.35.031(a), that notice under (a) of this section was provided to the person, and that contains a statement of the circumstances surrounding the arrest and the grounds upon which the officer's belief that the person was driving while intoxicated a motor vehicle for which a driver's license is required was based,

At Champion's request an administrative hearing was held before a Department of Public Safety hearing officer. Alaska Statute 28.15.166(g) limits the issues in such hearings to

whether the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while intoxicated and whether

(1) the person refused to submit to a chemical test under AS 28.35.031(a) after being advised that refusal would result in the suspension, revocation, or denial of the person's license or nonresident privilege to drive and that the refusal is a misdemeanor; or

(2) the chemical test authorized under AS 28.35.031(a) and administered to the person produced a result described in AS 28.35.030(a)(2).

The hearing conformed to those limits.

Finding that the breath test produced a result described in AS 28.35.030(a)(2),[2] the hearing officer affirmed the revocation. Champion appealed to the superior court, which summarily affirmed the hearing officer's decision.

Champion argues that the due process clause of the Alaska Constitution requires the state to take reasonable steps to preserve the breath sample or to provide some other means for the defendant in a license revocation proceeding to independently verify the breath test results. He argues that due process requirements render the test results inadmissible absent such procedures. We agree.

In *Lauderdale v. State,* 548 P.2d 376 (Alaska 1976), we held that due process requires that a defendant in a criminal prosecution for driving while intoxicated be afforded the opportunity to test the reliability or credibility of the results of the

breath test. We required the state to preserve for the defendant's analysis the ampoules used in the test because they could yield scientifically reliable data bearing on his innocence or guilt. *Id.* at 381.

A denial of the right to make such analysis, that is to say, to "cross-examine" the results of the test, would be reversible error without any need for a showing of prejudice. It would be denial of a right to a fair trial, and a fair trial is essential to affording an accused due process of law.

*Id.* (footnotes omitted).

The court of appeals subsequently held that due process requires the prosecution to make reasonable efforts to preserve a breath sample or to take other steps to allow a criminal defendant to verify the results of the breathalyzer test. *Municipality of Anchorage v. Serrano,* 649 P.2d 256 (Alaska App. 1982). It found that

[a] breath sample would help to provide a check on possible operator error and would provide a means of assuring that the breathalyzer mechanical components were not malfunctioning. A breath sample would also provide a means of determining whether the test result was in any way affected by the breathalyzer's inherent inaccuracy. By making it an offense to operate a car with a certain level of blood or breath alcohol, the current state statute and the city ordinance both place great emphasis on the breath tests. The ability of the defendant to "cross-examine" these tests is critical to his case and to the integrity of the criminal justice system.

*Id.* at 259 (footnote omitted).

Here, the state argues that an administrative driver's license revocation proceed-

---

the department shall revoke the person's license or nonresident privilege to drive a motor vehicle in the state....

**2.** Alaska Statute 28.35.030(a)(2) provides:

(a) A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle or operates an aircraft or a water craft

....

(2) when, as determined by a chemical test taken within four hours after the alleged offense was committed, there is 0.10 percent or more by weight of alcohol in the person's blood or 100 milligrams or more of alcohol per 100 milliliters of blood, or when there is 0.10 grams or more of alcohol per 210 liters of the person's breath;

ing is a civil proceeding in which the due process safeguards announced in *Serrano* do not apply. In the context of the constitutional right to jury trial in criminal cases we have "defin[ed] the category of 'criminal' prosecutions as including any offense a direct penalty for which may be incarceration in a jail or penal institution. It also includes offenses which may result in the loss of a valuable license, such as a driver's license...." *Baker v. City of Fairbanks*, 471 P.2d 386, 402 (Alaska 1970). As the state observes, however, we added that

> [t]his does not cover revocation of licenses pursuant to administrative proceedings where lawful criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation or suspension in such instances is not that one has committed a criminal offense, but that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of crime.

*Id.* at n. 28. The state asserts that the purpose of an administrative license revocation is to protect the public rather than to establish criminality, therefore the license revocation hearing is a civil proceeding.

The fact that the proceeding is civil is not determinative of the applicability of the *Lauderdale-Serrano* protections. We have avoided relying on formalistic categorizations of proceedings as "criminal" and "civil" when determining if strict due process safeguards are required. *See Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979). We decline to rely on the categorizations drawn in *Baker*, which are necessary in determining the extent of the constitutional right to a jury trial in criminal prosecutions.

The state points to substantive differences in the criminal prosecution and the administrative revocation proceeding. It argues that the right to preservation of a second breath sample should be limited to criminal prosecutions, in which a higher burden of proof is imposed on the state and in which a more important interest of the individual is at stake.

We are not persuaded that these differences warrant the lower procedural safeguards in the revocation proceeding urged here. A driver's license is an important property interest, and the driver has a constitutional right to a meaningful hearing before the state can suspend his license. *Graham v. State*, 633 P.2d 211, 216 (Alaska 1981). As in a criminal prosecution for driving while intoxicated, the breath test is of central importance in the administrative license revocation proceeding. *See* AS 28.15.166(g), *supra*. The ability of the defendant to evaluate these tests is critical to his ability to present his case. To deny a driver a reasonable opportunity to test the reliability and credibility of the breath test is to deny him a meaningful and fundamentally fair hearing.[3] The decision of the Department of Public Safety and the order of the superior court are REVERSED.

---

**3.** The state briefly argues that the Intoximeter 3000 used to measure the alcohol concentration has been shown to be so accurate that it is highly unlikely that the preserved breath sample would have been exculpatory. It notes that another court has found the Intoximeter 3000 to be accurate, reliable, and relatively insusceptible to operator error compared to other breath-testing devices. *People v. Jones*, 118 Misc.2d 687, 461 N.Y.S.2d 962, 965, 968 (Albany County Ct. 1983). While the risk of an erroneous revocation under the procedures used and the probable value of additional procedures are factors to be considered in determining questions of fundamental fairness, *Hilbers v. Municipality of Anchorage*, 611 P.2d 31, 36 (Alaska 1980), the record in this case is insufficient to support a conclusion as to the accuracy of the Intoximeter 3000. Moreover, these factors comprise only a part of traditional due process analysis, which also entails consideration of the private interest involved and the government's interest, including the administrative burdens of the additional procedural requirements. The state does not address these considerations. We decline to amend the due process calculus applied in *Serrano* on the basis of the record and arguments in this case.