**Joseph N. BARCOTT, Appellant,**

v.

**STATE OF ALASKA, DEPARTMENT OF PUBLIC SAFETY, DIVISION OF MOTOR VEHICLES, Appellee.**

**No. S–1692.**

Supreme Court of Alaska.

Aug. 14, 1987.

Rehearing Granted and Opinion Amended Sept. 11, 1987.

---

Joseph N. Barcott, in pro. per., Anchorage, for appellant.

Teresa Williams, Asst. Atty. Gen., Ronald W. Lorenson, Acting Atty. Gen., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Barcott appeals from a Department of Public Safety ("department") decision to suspend his driver's license. The department's decision was based on an Intoximeter 3000 breath test administered to Barcott shortly after his arrest for driving while intoxicated. The test indicated a .10 alcohol level. Barcott asserts that the administrative hearing officer denied him due process of law by refusing to consider evidence of the intoximeter's margin of error. We agree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Anchorage Police Officer Whitener stopped Barcott for speeding at 1:50 a.m., on August 1, 1985. Officer Whitener detected the odor of alcohol on Barcott's breath and administered several sobriety tests, including a preliminary alcohol breath test which produced a reading of .102% alcohol in the breath sample. Barcott was arrested for driving while intoxicated (DWI) and taken to the police station. At 2:23 a.m., Officer Whitener administered an Intoximeter 3000 breath test which produced a reading of .10%. Immediately before administering the test to Barcott, Whitener performed a control test on the machine by introducing an air sample known to contain .103% alcohol. This control test produced a reading of .104%, or .001% higher than the actual alcohol level present in the control sample. Whitener performed a second control test, apparently using the same .103% control sample, one minute after Barcott was tested. This second control test produced a reading of .097%.

Based on the intoximeter reading of .10% from Barcott's breath sample, and pursu-

ant to AS 28.15.165(a),[1] Officer Whitener gave Barcott written notice of the Department's intent to revoke his driver's license. The criminal charge against Barcott for DWI was reduced to careless driving, to which Barcott pleaded no contest.

Barcott timely requested administrative review of the civil revocation action. A hearing was held before Hearing Officer Joan Glafke, who affirmed the revocation order, fully revoking Barcott's license for one month and placing limitations on the license for an additional two months. Barcott appealed to the superior court, which affirmed, concluding that the hearing officer's decision was supported by substantial evidence, was not arbitrary or capricious, and was not clearly erroneous. On appeal to this court, Barcott asserts that failing to consider the intoximeter's margin of error was a denial of his constitutional right to due process of law[2] (due process). We agree and reverse the decision below.

## II. DISCUSSION

### A. Standard of Review.

■ We review the hearing officer's decision to revoke Barcott's license independently of the superior court, which was acting as an intermediate court of appeal. *Jager v. State*, 537 P.2d 1100, 1106 (Alaska 1975); *State v. Marathon Oil Co.*, 528 P.2d 293, 298 (Alaska 1974). Since Barcott's constitutional claim presents a question of law, we are not bound by the lower court's decision. Rather, we will "adopt the rule

of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

### B. Due Process Requires Consideration of Margin of Error.

■ In an opinion of this court issued after the hearing officer had ruled in this case, we held that the same procedural safeguards apply in civil driver's license revocation proceedings for driving while intoxicated as apply in criminal prosecutions for that offense. *Champion v. Department of Public Safety*, 721 P.2d 131, 133 (Alaska 1986). This court stated:

A driver's license is an important property interest, and the driver has a constitutional right to a meaningful hearing before the state can suspend his license. As in a criminal prosecution for driving while intoxicated, the breath test is of central importance in the administrative license revocation proceeding. The ability of the defendant to evaluate these tests is critical to his ability to present his case. To deny a driver a reasonable opportunity to test the reliability and credibility of the breath test is to deny him a meaningful and fundamentally fair hearing.

*Id.* at 133 (citations and footnote omitted).

The reasoning of *Champion* leads inescapably to the conclusion that due process requires consideration of the margin of error inherent in the breath testing procedure used in this case. In *Champion* we held

1. AS 28.15.165(a) provides:
   If a chemical test administered under AS 28.-35.031(a) to a person driving a motor vehicle for which a driver's license is required produces a result as described in AS 28.35.-030(a)(2) or if a person under arrest for driving a motor vehicle for which a driver's license is required refuses to submit to a chemical test under AS 28.35.031(a), a law enforcement officer shall read a notice [advising *inter alia* that the department intends to revoke the person's license unless he requests administrative review].
   AS 28.35.030 is a criminal DWI statute and provides:
   (a) A person commits the crime of driving while intoxicated if the person operates or drives a motor vehicle or operates an aircraft or a watercraft

   .   .   .   .   .
   (2) when, as determined by a chemical test taken within four hours after the alleged offense was committed, there is 0.10 percent or more by weight of alcohol in the person's blood or 100 milligrams or more of alcohol per 100 milliliters of blood, or when there is 0.10 grams or more of alcohol per 210 liters of the person's breath; ...

2. Article I, section 7 of the Alaska Constitution provides:
   No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

that a defendant has a constitutionally guaranteed right to attack the accuracy of a breath alcohol test by introducing evidence of another test producing an exculpatory result. *Id.* It would be anomalous to allow such a collateral attack but forbid a direct attack on the test results by pointing to inaccuracies in the pre- and post-subject control tests. In this case, the machine used to test Barcott registered .001% higher than it should have according to the department's own control sample rating. Since Barcott's test result was exactly at the .10% statutorily defined level of intoxication, AS 28.35.030(a)(2), correction of a .001% upward deviation would place Barcott's test result below the legal limit, and the breath test could not have served as the basis for revoking Barcott's license. *See* AS 28.15.165(a).[3]

The state attempts to distinguish *Champion* on the ground that in this case Barcott was given the opportunity to take an independent blood test but chose not to do so. The state apparently is arguing that *Champion* requires only that the state either preserve the breath sample or offer an independent blood test. This ignores the clear import of *Champion* that due process requires a "reasonable opportunity to test the reliability and credibility of the breath test." *Champion*, 721 P.2d at 133. The inherent inaccuracy of the breath test goes directly to this issue.[4]

Supporting the conclusion that a test's margin of error should be considered are several criminal cases holding that a defendant's test results on an alcohol blood level test must be above the legal limit *after* factoring in the test's margin for error. *People v. Pritchard*, 162 Cal. App.3d Supp. 13, 209 Cal.Rptr. 314, 315 (1984) (holding that machine margin of error must be applied to breath test results before determining whether alcohol level exceeds legal limit); *People v. Campos*, 138 Cal.App.3d Supp. 1, 188 Cal.Rptr. 366, 368 (1982) (holding it was error for the trial

court to instruct the jury on the statutory presumption that a person with blood alcohol test results of .10% or more was under the influence of alcohol because the margin of error on the test administered to the defendant showed that it was "as likely that the amount of alcohol in defendant's blood was below .10 percent as that it was .10% or more"); *State v. Boehmer*, 1 Haw.App. 44, 613 P.2d 916, 918–19 (1980) (margin of error in blood alcohol test administered to defendant created reasonable doubt that defendant's blood alcohol content was above the level necessary to invoke the statutory presumption of intoxication); *State v. Bjornsen*, 201 Neb. 709, 271 N.W.2d 839, 840 (1978) ("The Legislature has selected a particular percent of alcohol to be a criminal offense if present in a person operating a motor vehicle. It is not unreasonable to require that the test, designed to show that percent, do so outside of any error or tolerance inherent in the testing process."); *State v. Prestier*, 7 Ohio Misc.2d 36, 455 N.E.2d 24, 27 (1982) ("Every margin of error in a chemical test utilized for the purpose of determining the alcoholic content of the defendant's blood as it addresses his guilt or lack of guilt in operating a motor vehicle while under the influence of alcohol must be strictly construed against the state and liberally construed in favor of the defendant."); *State v. Keller*, 36 Wash.App. 110, 672 P.2d 412, 414 (1983) (holding that the margin of error in the breathalyzer test should be considered by the trier of fact in deciding whether the evidence sustains a finding of guilt beyond a reasonable doubt); *but see State v. Rucker*, 297 A.2d 400, 402 (Del.Super.1972) ("The statute does not set up a presumption. It simply makes a blood alcohol concentration of 0.100%, or more, as shown by specified types of tests, an element of the offense.")

The state attempts to distinguish these cases on the ground that they all involve criminal prosecutions rather than civil license revocations. In this regard, the state

---

**3.** In addition, the Intoximeter 3000's specifications indicate an inherent margin of error of plus or minus .01% which also could reduce Barcott's .10% test result below the legal limit.

**4.** We also note that requiring the hearing officer to consider the test's margin of error places no additional investigative burden on the state.

relies on *Nugent v. Iowa Department of Transportation*, 390 N.W.2d 125 (Iowa 1986), in which the court held:

> [D]ifferent concerns are addressed in civil administrative proceedings. Thus, the criminal cases cited by plaintiff are not controlling in this situation.

*Id.* at 128.

We also have recognized the substantive differences between the criminal DWI prosecutions and license revocation proceedings, but nonetheless determined in *Champion* that any differences did not warrant lower procedural safeguards in the civil revocation proceeding. *Champion*, 721 P.2d at 133.

■ The state also argues that the legislature presumably was aware of the margin of error in the test but nonetheless created a presumption of intoxication based on a particular test result. There are flaws in this argument. First, the legislature did not approve the Intoximeter 3000 test, it authorized the Alaska Department of Health and Social Services "to approve satisfactory techniques, methods and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis." AS 28.35.033(d). Second, *Champion* mandates that the defendant in a license revocation proceeding has the constitutionally guaranteed right to challenge the accuracy of the breath test independently. We have thus concluded that due process will not allow the results of a chemical test authorized under AS 28.35.031(a) to be conclusively presumed accurate.[5]

Our decision in *Champion* is controlling and mandates consideration of the inherent margin of error in any blood alcohol testing procedure which is to serve as the basis for driver's license revocation. Since both the department's own control sample test and the Intoximeter 3000's specifications showed a sufficient discrepancy to bring

Barcott's test results below the legal limit, the license revocation pursuant to AS 28.-15.166(g) cannot stand. The decision of the hearing officer is REVERSED and the case is REMANDED to the department for further proceedings consistent with this opinion.

---

5. *Hrncir v. Commissioner*, 370 N.W.2d 444 (Minn.App.1985), relied on by the state, is likewise distinguishable. In *Hrncir*, the court refused to require consideration of test margin of error because "[t]he statute refers to test results showing a blood alcohol concentration of .10 or more, not .10 plus or minus a margin of error." *Id.* at 445. *See also Holstein v. Commissioner*, 392 N.W.2d 577, 580–81 (Minn.App.1986) (following *Hrncir*). Minnesota has no *Champion* rule equivalent.