*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JASON BARNEBEY, | ) |
| | ) Supreme Court No. S-16844 |
| Appellant, | ) |
| | ) Superior Court No. 4FA-15-01406 CI |
| v. | ) |
| | ) O P I N I O N |
| STATE OF ALASKA, | ) |
| DEPARTMENT OF | ) No. 7438 – April 10, 2020 |
| ADMINISTRATION, DIVISION OF | ) |
| MOTOR VEHICLES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Robert John, Law Office of Robert John, Fairbanks, for Appellant. Shelley J. White, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

MAASSEN, Justice.

I.     INTRODUCTION

A man was arrested for driving under the influence of alcohol. At the police station he was administered a breath test by a DataMaster testing instrument,

which showed a result of .081 percent alcohol, above the .08 legal limit. The man elected to obtain an independent chemical test, which showed a result of .073. Following an administrative hearing, a hearing officer relied on the DataMaster breath-test result to sustain the Department of Motor Vehicles's revocation of the man's license pursuant to AS 28.15.165(c).

The man appealed to the superior court, arguing, as he had at the administrative hearing, that it was error not to consider the DataMaster's inherent margin of error in determining whether his test result was over the legal limit. The superior court affirmed the hearing officer's decision and awarded attorney's fees to the State; the man filed this appeal.

We conclude that the hearing officer properly interpreted the governing law and did not violate due process in her consideration of the DataMaster's margin of error. We affirm the decision revoking the man's license. However, we conclude that it was error for the superior court to award attorney's fees to the State without considering whether the man was entitled to protection as a constitutional litigant under AS 09.60.010(c)(2). We therefore vacate the attorney's fees award and remand the case for further consideration of only that issue.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

An Alaska state trooper stopped Jason Barnebey just after midnight for failing to use a turn signal and driving on the double yellow line. According to the trooper, Barnebey had "bloodshot and watery eyes" and his breath had "a light odor of an alcoholic beverage." Barnebey admitted to the trooper that he had consumed a few drinks.

The trooper administered three standardized field sobriety tests. Barnebey passed the walk-and-turn test and the one-leg-stand test, but he failed the horizontal gaze nystagmus (HGN) test with the minimum number of "clues" necessary to be considered a failure.

The trooper arrested Barnebey for driving under the influence (DUI) and gave him a preliminary breath test, which produced a reading of .081 percent breath alcohol concentration (BrAC). At the police station, at about 1:00 a.m., Barnebey gave a breath sample for testing on the DataMaster machine. This also produced a reading of .081 BrAC, just over the legal limit of .08 set by AS 28.35.030(a)(2).

Barnebey requested an independent chemical test, as was his right.[1] He had blood drawn at Fairbanks Memorial Hospital at 1:35 a.m., and laboratory testing of the sample showed a blood-alcohol level of .073 g/100mL. Because of the DataMaster test result, however, the trooper informed Barnebey that his driver's license would be revoked unless he requested an administrative hearing.

## B.     Proceedings

A hearing officer with the Department of Administration, Division of Motor Vehicles (DMV), presided over a two-day administrative hearing. Barnebey raised two defenses to revocation of his driver's license: (1) the trooper lacked probable cause for the arrest, and (2) the breath-test result of .081 was within the DataMaster's inherent margin of error. The hearing officer rejected these defenses. She found that "the operator who administered [the] breath test was certified at the time and complied with

---

[1]     *See* AS 28.35.033(e) ("The person tested may have a physician, or a qualified technician, chemist, registered or advanced practice registered nurse, or other qualified person of the person's own choosing administer a chemical test [of the person's breath or blood] in addition to the test administered at the direction of a law enforcement officer.").

the regulations set forth for breath analysis," and that "[t]he instrument did a self-check before and after [Barnebey's] subject sample." She noted that the DataMaster was "within its working tolerances." Finally, she found that there was no "reason or case law" requiring her to base her decision on the result of Barnebey's independent chemical test rather than the DataMaster test result, and that the independent chemical test actually corroborated the DataMaster result because it showed "an elimination due to the consumption earlier in the evening." The hearing officer affirmed the DMV's decision to revoke Barnebey's license, and, because of his prior alcohol-related driving offenses, the revocation was for three years.

Barnebey appealed the hearing officer's decision to the superior court and moved to stay the license revocation pending the appeal's outcome. The superior court granted the stay. Barnebey raised two points on his superior court appeal: (1) that the hearing officer erred by failing to conclude that Barnebey's test result was within the DataMaster's inherent margin of error and therefore below the legal limit,[2] and (2) that the hearing officer erred by assuming that the lower blood-alcohol level indicated by his independent chemical test was simply a reflection of the passage of time since the DataMaster test. The superior court upheld the hearing officer's decision, concluding that the DataMaster's margin of error was irrelevant to the offense and that substantial evidence, including the breath-test result and Barnebey's admission that he had been drinking, supported the hearing officer's decision.

The DMV moved for attorney's fees. Barnebey opposed the motion, arguing that he was a constitutional claimant for purposes of the statutory protection

---

[2]     Specifically, Barnebey argued that the DataMaster's margin of error is five percent and "thus, in order for a person's DataMaster result to be over the legal limit, the result must be .085."

against adverse awards of attorney's fees.[3]  But the superior court awarded DMV $4,658.33 in attorney's fees — twenty percent of what DMV had incurred on appeal. Barnebey appeals.

## III.   STANDARD OF REVIEW

When the decision of a hearing officer in a driver's license revocation hearing is appealed to us from a decision of the superior court sitting as an intermediate court of appeal, we independently review the hearing officer's decision.[4]  We review it "under AS 28.15.166(m), which provides that the court 'may reverse the department's determination if the court finds that the department misinterpreted the law, acted in an arbitrary and capricious manner, or made a determination unsupported by the evidence in the record.' "[5]  We apply our independent judgment to questions of law,[6] including "questions involving the constitutionality of a statute[,] 'and will adopt the rule of law which is most persuasive in light of precedent, reason, and policy.' "[7]  One such question of law reviewed de novo is "whether the superior court correctly applied the law

---

[3]      *See* AS 09.60.010(c)(2) (prohibiting attorney's fees awards against non-prevailing parties bringing non-frivolous constitutional claims and lacking "sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved").

[4]      *Morris v. State, Dep't of Admin., Div. of Motor Vehicles*, 186 P.3d 575, 577 (Alaska 2008).

[5]      *Id.* (quoting *Saltz v. State, Dep't of Pub. Safety*, 942 P.2d 1151, 1152 & n.2 (Alaska 1997) (holding that supreme court and superior courts apply same standard of review)).

[6]      *See State v. Schmidt*, 323 P.3d 647, 655 (Alaska 2014).

[7]      *Valentine v. State*, 215 P.3d 319, 322 (Alaska 2009) (quoting *State v. Murtagh*, 169 P.3d 602, 606 (Alaska 2007)).

allowing or prohibiting an [attorney's fees] award."[8]  We review "the hearing officer's factual findings under the substantial evidence test, 'determining "whether the findings are supported by such evidence as a reasonable mind might accept as adequate to support a conclusion." ' "[9]

## IV.   DISCUSSION

### A.    The Hearing Officer Did Not Violate Barnebey's Due Process Rights By Declining To Find That A DataMaster Test Result Within The Machine's Inherent Margin Of Error Was Below The Legal Limit.

"A driver's license is an important property interest, and the driver has a constitutional right to a meaningful hearing before the [S]tate can suspend [the] license."[10]  Barnebey argues that the DMV violated his due process right to a meaningful hearing when it failed to conclude that a DataMaster result within the machine's inherent margin of error "brings the test result below the legal limit," requiring dismissal of the revocation proceeding.[11]

Administrative license revocations resulting from sobriety tests are governed by AS 28.15.165.  The statute's language has been amended several times, but the three essential prerequisites for revocation remain unchanged: (1) probable cause for

---

[8]     *Titus v. State, Dep't of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1277 (Alaska 2013).

[9]     *Morris*, 186 P.3d at 577 (quoting *Saltz*, 126 P.3d at 136).

[10]    *Champion v. Dep't of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986).

[11]    Barnebey also appears to frame his argument as a challenge to the hearing officer's exclusion of margin-of-error evidence.  But he does not identify any evidence that was excluded, and the hearing record shows that the hearing officer accepted most evidence that was offered, including portions of a transcript from another case that Barnebey offered as support for his margin-of-error argument.

the arresting officer to believe that the driver was driving while under the influence;[12] (2) a chemical test that "*produced a result* described in AS 28.35.030(a)(2) or the person refused to submit to a chemical test";[13] and (3) proper notice of the DMV's intent to revoke.[14] The chemical test "result" incorporated by reference is "0.08 percent or more by weight of alcohol in the person's blood," "80 milligrams or more of alcohol per 100 milliliters of blood," or "0.08 grams or more of alcohol per 210 liters of the person's breath."[15] And since 1996, AS 28.90.020 clarifies that "the result described by statute is not affected by the [testing] instrument's working tolerance."[16]

A person may request administrative review of a license revocation as outlined in AS 28.15.166. However, the review hearing is "limited to the issues of whether the law enforcement officer had probable cause" and whether the person refused to submit to a chemical test or whether an administered chemical test produced a result described in AS 28.35.030(a)(2).[17] If these issues "are determined in the affirmative by a preponderance of the evidence, the hearing officer shall sustain the action of" the DMV.[18]

---

[12]     AS 28.15.165(c)(3).

[13]     AS 28.15.165(c) (emphasis added).

[14]     AS 28.15.165(a).

[15]     AS 28.35.030(a)(2) (defining "crime of driving while under the influence of an alcoholic beverage").

[16]     Ch. 143, § 17, SLA 1996.

[17]     AS 28.15.166(g).

[18]     AS 28.15.166(j).

We have held that certain testing-related evidence may be excluded without running afoul of the due process guarantee when, given the elements of the alleged offense, the evidence is not relevant or exculpatory.[19] In order to explain why that holding directs our decision here, we first review past Alaska cases addressing breath-test evidence. We note that although administrative license revocations are governed by AS 28.15.165(c), our analysis of this issue must also examine the case law addressing AS 28.35.030(a)(2) — the statute that criminalizes driving under the influence "as determined by a chemical test" — because revocation under AS 28.15.165 depends in part on "a result described in AS 28.35.030(a)(2)."[20] Understanding subsection .030(a)(2) and how it has been interpreted in both license revocations and criminal prosecutions is thus important to our analysis.

1. **Alaska precedents permit the exclusion of margin-of-error evidence under AS 28.35.030(a)(2).**

In *Lauderdale v. State*, decided in 1976, we approved a district court's order suppressing the results of a breathalyzer test in a DUI prosecution after the State was unable to produce the ampoule of the defendant's collected breath for independent testing.[21] We reasoned that the defendant would be denied a fair trial if he was not given the opportunity to "test the reliability or credibility of the results of the breathalyzer test . . . by a scientific analysis of some of the [collected breath samples] which . . . may well yield scientifically reliable data bearing on his innocence or guilt."[22]

---

[19]     *See Valentine v. State*, 215 P.3d 319, 325-27 (Alaska 2009).

[20]     AS 28.15.165(c).

[21]     548 P.2d 376, 378, 384 (Alaska 1976).

[22]     *Id.* at 381.

Ten years later, in *Champion v. Department of Public Safety*, we extended this rationale to the State's failure to preserve breath samples in license revocation proceedings, which are civil rather than criminal.[23] We reasoned in *Champion* that the driver's license is "an important property interest" and the driver is therefore entitled to "a meaningful hearing" before it can be taken away; that "the breath test is of central importance in the administrative license revocation proceeding"; and that "[t]he ability of the defendant to evaluate these tests is critical to [the defendant's] ability to present [a] case."[24] We concluded that "[t]o deny a driver a reasonable opportunity to test the reliability and credibility of the breath test is to deny [the driver] a meaningful and fundamentally fair hearing" in the administrative process.[25] A few years later we concluded that this due process concern could be satisfied if a defendant was given notice of the statutory right to an independent test.[26]

We addressed margin-of-error evidence in *Barcott v. State, Department of Public Safety, Division of Motor Vehicles*.[27] The driver in *Barcott* was given a preliminary breath test that produced a reading of .102 percent (when the legal limit was .10).[28] At the police station the driver was given a breath test on the Intoximeter

---

[23]     721 P.2d 131, 132-33 (Alaska 1986).

[24]     *Id.* at 133.

[25]     *Id.*

[26]     *Gundersen v. Municipality of Anchorage*, 792 P.2d 673, 677 (Alaska 1990).

[27]     741 P.2d 226 (Alaska 1987).

[28]     *Id.* at 227, 228 n.1.

3000 machine, which produced a reading of .10 percent.[29] The police officer also conducted two control tests on the machine; one produced a reading .001 percent higher than the testing sample's known alcohol level and the second produced a reading .006 percent lower.[30] We reversed the hearing officer's revocation of the defendant's driver's license.[31] Citing *Champion*, we held that the case's reasoning "leads inescapably to the conclusion that due process requires consideration of the margin of error inherent in the breath testing procedure used in this case."[32] We rejected the State's argument "that the legislature presumably was aware of the margin of error in the test but nonetheless created a presumption of intoxication based on a particular test result."[33] We observed that the legislature had not specifically approved the Intoximeter 3000 test but rather had simply delegated the breathalyzer-certification process to the Department of Health and Social Services.[34] And we reiterated that "*Champion* mandates that the defendant in a license revocation proceeding has the constitutionally guaranteed right to challenge the accuracy of the breath test independently."[35]

We addressed the issue again six years later in *Haynes v. State, Department*

---

[29] *Id.* at 227.

[30] *Id.*

[31] *Id.* at 230.

[32] *Id.* at 228.

[33] *Id.* at 230.

[34] *Id.*

[35] *Id.*

*of Public Safety*.[36]  In that case, unlike *Barcott*, the hearing officer expressly considered evidence of the Intoximeter 3000's margin of error; however, the hearing officer also relied on police testimony about the defendant's "appearance and behavior" to find that the defendant's breath-alcohol content must have been above the statutory limit despite inconclusive test results.[37]  On appeal we held this was error; we held that the test's "inherent margin of error" must invariably be applied in the defendant's favor absent express legislative intent to the contrary, and therefore a breath-test result that could fall below the statutory limit when the inherent margin of error is applied "cannot serve as the basis for a license revocation" regardless of "[e]xtrinsic evidence of intoxication."[38] We highlighted, however, the two possible interpretations of DUI statutes:  they may "create an offense upon a *test reading* in excess of their statutory limit or upon *an actual level of alcohol* in excess of the limit."[39]  We reiterated our conclusion in *Barcott* that the legislature apparently intended the latter.[40]  But we emphasized that the legislature could have taken the other tack:

> The legislature has the power to require the revocation of a driver's license on the basis of a particular test result or reading, despite its inherent margin of error, when the legislature expressly considers that margin and deems it sufficiently negligible such that it may be disregarded.  In such circumstances, the test result is considered *tolerably* inaccurate, and, therefore, the Department may revoke a

---

[36]  865 P.2d 753 (Alaska 1993).

[37]  *Id.* at 754.

[38]  *Id.* at 756.

[39]  *Id.* at 755 (emphasis in original).

[40]  *Id.* at 755-56.

license on the basis of the test result without regard to the test's margin of error.[41]

In 1996, in the wake of *Haynes*, the Alaska legislature enacted AS 28.40.060. The statute, since renumbered as AS 28.90.020, provides that "if an offense described under [Title 28] requires that a chemical test of a person's breath produce a particular result, and the chemical test is administered by a properly calibrated instrument approved by the Department of Public Safety, the result described by statute is not affected by the instrument's working tolerance."[42] The court of appeals acknowledged the effect of this statutory change in *Mangiapane v. Municipality of Anchorage*.[43] The court noted that the legislature had decided to reject our interpretation of the DUI offense in *Haynes* — as based on the actual measure of alcohol in the person's blood or breath — in favor of criminal liability based on the test result: "The fact that the driver's true blood-alcohol or breath-alcohol level may be slightly lower (due to the Intoximeter's acknowledged margin of error) is no longer relevant to the driver's guilt under AS 28.35.030(a)(2)."[44]

A year later the court of appeals rejected a defendant's argument that AS 28.40.060 violated his due process rights because it "allows the Department of Public Safety to approve any instrument, even one which is very inaccurate, to establish his level of intoxication."[45] The court of appeals concluded that the legislature must have been well aware of the State's long-time use of the Intoximeter 3000, with a known

---

[41]  *Id.* at 755 (emphasis in original).

[42]  AS 28.90.020.

[43]  974 P.2d 427 (Alaska App. 1999).

[44]  *Id.* at 430.

[45]  *Bushnell v. State*, 5 P.3d 889, 890 (Alaska App. 2000).

-12-                                                          7438

margin of error of .01 percent, and must have "implicitly decided that a .01 percent working tolerance was 'tolerably inaccurate.' "[46]

In *Conrad v. State* the court of appeals addressed "[w]hether the State must prove that a motorist's blood alcohol level was above the legal limit at the time of the testing or, instead, at the time the motorist operated or controlled the vehicle."[47] The court refined its decision in *Mangiapane* to make clear "that a defendant's guilt under AS 28.35.030(a)(2) hinges on the defendant's blood alcohol content at the time the defendant operated or controlled a motor vehicle"; the result of a chemical test "administered to the defendant within the statutorily prescribed four hours . . . will create a presumption that the defendant's blood alcohol level was at least as high at the time the defendant operated or controlled the vehicle," but the defendant "may introduce evidence to rebut this presumption."[48]

In response to the court of appeals' *Conrad* opinion, the legislature amended AS 28.35.030.[49] First, the legislature amended subsection (a)(2) to provide that the driver's guilt could be determined solely by the result of a chemical test properly administered within four hours of driving regardless of the blood-alcohol level at the time of driving.[50] Second, the legislature added subsection (s), which precluded

---

[46]    *Id.* at 892.

[47]    54 P.3d 313, 314 (Alaska App. 2002), *superseded by statute*, ch. 124, §§ 25, 27, SLA 2004, *as recognized in Valentine v. State*, 215 P.3d 319, 322-24 (Alaska 2009).

[48]    *Id.* at 315.

[49]    *See Valentine*, 215 P.3d at 322-24 (describing 2004 amendments).

[50]    Ch. 124, § 25, SLA 2004 (inserting the language "or (2) and if" to introduce AS 28.35.030(a)(2), allowing chemical test result within four hours of driving to stand
(continued...)

defendants from introducing a delayed-absorption defense by claiming that their chemical test results did not accurately measure their blood-alcohol level at the time of driving.[51]

We addressed these amendments in *Valentine v. State*.[52] A defendant was charged with DUI under both AS 28.35.030(a)(1) and (a)(2).[53] We called subsection (a)(1) the "under-the-influence" theory; this "makes it a crime to drive while under the influence of alcohol, regardless of blood alcohol."[54] Subsection (a)(2) we called the "blood-alcohol-level" theory; this provides that "a person commits a DUI offense if the person takes a chemical test within four hours of driving that detects a blood alcohol level of at least 0.08 percent, regardless of the person's blood alcohol at the time of driving."[55] The defendant in *Valentine* argued that the amended statute's exclusion of delayed-absorption evidence was unconstitutional, but the trial court rejected his argument, and the jury convicted him "using a general verdict form that did not specify whether he was convicted under subsection (a)(1), subsection (a)(2), or both."[56] On

---

[50]     (...continued)
alone in determining defendant's guilt); *Valentine*, 215 P.3d at 322-24.

[51]     Ch. 124, § 27, SLA 2004 ("[T]he consumption of alcohol before operating or driving may not be used as a defense that the chemical test did not measure the blood alcohol at the time of the operating or driving."); *Valentine*, 215 P.3d at 324-25.

[52]     215 P.3d at 322-24.

[53]     *Id.* at 321.

[54]     *Id.* at 320.

[55]     *Id.*

[56]     *Id.* at 320-21.

appeal we reversed the conviction and remanded for a new trial.[57]  We held that although the subsection (a)(2) offense — the "blood-alcohol-level" theory — now depended solely on whether "the driver's chemical test result is 0.08 percent or higher within four hours of driving," the subsection (a)(1) offense — the "under-the-influence" theory — continued to depend on whether "the driver was impaired at the time of driving."[58] Therefore, "[w]hether a chemical test result accurately indicates a driver's blood alcohol content at the time of driving continues to be relevant to prosecutions under subsection (a)(1) if they rely on chemical test results," and it would violate due process to deny the defendants the opportunity to challenge those results.[59]

> **2.    AS 28.35.165(c) does not violate due process by allowing a hearing officer to rely solely on the result of a properly administered breath test.**

Barnebey argues that under this line of case law, "fundamental fairness requires that [defendants] be allowed to challenge the reliability and credibility of the breath test during . . . license revocation proceeding[s]," and that *Valentine*, our most recent case addressing this issue, requires recognition of the "well-established scientific fact" that the DataMaster has an inherent margin of error.  But Barnebey oversimplifies our decision in *Valentine*, which maintained the important distinction between offenses dependent on actual blood-alcohol level and those dependent on a particular test result.

Indeed, *Valentine*'s discussion of due process controls our decision of Barnebey's claim here.  In *Valentine* we followed the issue-framing used by Justice Ginsburg in her concurrence in *Montana v. Egelhoff*, where she explained:

---

[57]    *Id.* at 327.

[58]    *Id.* at 326.

[59]    *Id.* at 326-27.

> If [the statute] is simply a rule designed to keep out "relevant, exculpatory evidence," . . . [the statute] offends due process. If it is, instead, a redefinition of the mental-state element of the offense, on the other hand, . . . [the] due process concern "would not be at issue, for a state legislature certainly has the authority to identify the elements of the offenses it wishes to punish," and to exclude evidence irrelevant to the crime it has defined.[60]

Applying this analysis to the legislature's 2004 amendments, we held in *Valentine* that "[t]he Alaska Legislature properly used its broad discretion to redefine the elements" of subsection (a)(2), basing criminal liability solely on the result of a properly administered chemical test of .08 or higher within four hours of driving.[61] Because delayed-absorption evidence was irrelevant to the crime as legislatively defined, excluding such evidence did not violate due process.[62]

In this appeal we look to AS 28.15.165(c), the administrative revocation statute, for the definition of the offense at issue. DMV's authority to revoke a license has always been statutorily phrased as dependent on the "result" of a chemical test; AS 28.15.165(c) differs from the DUI criminal statute in that it does not include an alternative "under the influence" provision like AS 28.35.030(a)(1). A likely rationale for the difference appears in legislative history. A police officer acting under the authority of AS 28.15.165(b) may confiscate a driver's license, and, according to the statutory language, a test result is sufficient to justify this action. At a hearing on the bill creating the administrative revocation remedy, the General Counsel for the Alaska Court

---

[60]     *Id.* at 326 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 56-57 (1996) (Ginsburg, J., concurring)).

[61]     *Id.*

[62]     *Id.*

System testified that having preliminary hearings handled by the Department of Public Safety rather than the Court System would decrease costs and delays;[63] at the time, the Court System was experiencing long delays in calendaring hearings.[64] An invited expert testified that increasing the severity of penalties would have little deterrent effect without an increase in the certainty of punishment.[65] A municipal prosecutor testified that suspending or revoking drivers' licenses was a more effective deterrent to drunk driving than jail time.[66] A university sociologist testified, "Deterrence works when the punishment is[] certain, swift, and severe. Administrative revocations generally meet [these] criteria."[67] The legislature could reasonably have been reacting to this testimony when it decided to base revocation on something that an officer could determine relatively quickly — a breath-test result — and not actual blood-alcohol content, which could not be determined definitively without weighing the accuracy and reliability of the devices used to measure it. Administrative hearings, if requested, are similarly

---

[63] Minutes, Sen. Judiciary Comm. Hearing on H.B. 6, 13th. Leg., 1st Sess., Tape 1, Side A, No. 000 (May 27, 1983) (testimony of Karla Forsythe, Alaska Court System General Counsel).

[64] Minutes, Sen. State Affairs Standing Comm. Hearing on H.B. 6, 13th Leg., 1st Sess., Tape 2, Side 1, No. 202 (May 10, 1983) (testimony of Karla Forsythe, Alaska Court System General Counsel).

[65] Minutes, Sen. State Affairs Standing Comm. Hearing on H.B. 6, 13th Leg., 1st Sess., Tape 1, Side 1, No. 173 (Apr. 9, 1983) (testimony of Dennis Kelso, Altam Associates).

[66] *Id.* at Tape 3, Side 1, No. 286 (testimony of Allen Bailey, Anchorage Municipal Prosecutor).

[67] Minutes, Sen. State Affairs Standing Comm. Hearing on S.B. 61, 13th. Leg., 1st Sess., Tape 1, Side 2, No. 406 (Apr. 12, 1983) (testimony of Dr. Larry Ross, SUNY Buffalo).

streamlined by the narrow focus on the test result and whether the law enforcement officer had probable cause.[68]

The legislature's enactment of AS 28.90.020 (originally numbered AS 28.40.060) clarified that a testing machine's "working tolerance" was not to be considered as affecting the result under AS 28.35.030(a)(2). Further, the evolution of Alaska's DUI statutes and judicial interpretations described above — ultimately defining the offense under AS 28.35.030(a)(2) as dependent solely on the result of a properly administered chemical test[69] — supports our conclusion here. And "while AS 28.35.033 creates a presumption of the chemical test's validity, 'it does not make those [test] results unassailable.' "[70] Other evidence may call "into question the reliability or validity of [a] chemical breath test result."[71] However, because margin-of-error evidence is irrelevant to the statutory basis for revocation, excluding that evidence in revocation cases — or, as here, declining to find that a result within the margin of error is exculpatory — does not violate due process rights.

---

[68]     *See* AS 28.15.166(g).

[69]     *Haynes v. State, Dep't of Pub. Safety*, 865 P.2d 753, 755-56 (Alaska 1993) (noting that the legislature had the power to expressly consider margin-of-error evidence and "deem[] it sufficiently negligible such that it may be disregarded"); *Valentine v. State*, 215 P.3d 319, 326 (Alaska 2009) (holding that "[t]he legislative amendment to subsection (a)(2) . . . . rendered a defendant's blood alcohol at the time of driving irrelevant and thus inadmissible")*; Bushnell v. State*, 5 P.3d 889, 891-92 (Alaska App. 2000) (holding that the legislature "implicitly found that a working tolerance of .01 percent of a properly calibrated instrument was 'tolerably inaccurate' ").

[70]     *Morris v. State, Dep't of Admin., Div. of Motor Vehicles*, 186 P.3d 575, 579 (Alaska 2008) (alteration in original) (quoting *Keel v. State*, 609 P.2d 555, 557 (Alaska 1980)).

[71]     *Id.*

Barnebey also argues that the hearing officer's decision was not supported by substantial evidence given both the breath-test result within the DataMaster's margin of error and the independent chemical test result of .073 g/100mL. As explained above, however, AS 28.15.165(c) depends only on the result of a properly administered test under AS 28.35.030(a)(2), and margin-of-error evidence is not relevant to this determination. Alaska Statute 28.15.166(g)(2) directs the hearing officer to determine whether the chemical test produced a particular result, and the hearing officer did so in Barnebey's case. As for the alleged conflict between the breath-test result and the independent chemical test result, the weight given to each test "is a factual matter properly left to the hearing officer."[72] The hearing officer explained why she did not find the test results to be conflicting.[73] Her decision was supported by substantial evidence.

### 3. The revocation statute does not provide unfair notice in violation of due process.

"[D]ue process requires that any action involving deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case."[74] Barnebey argues that it is "unfair notice" to expect a person "to know what an inherently-inaccurate machine will say that a person's blood-alcohol level is." In support of his cursory argument he cites only *Valentine*, and

---

[72] *Id.* at 581.

[73] The hearing officer found that the independent test result was in fact consistent with the DataMaster result, showing that, in between the tests, "there was an elimination due to the [admitted] consumption earlier in the evening." *See id.* at 579-80 (describing alcohol elimination process as explanation for inconsistency between test results taken approximately 30 minutes apart).

[74] *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 842, 846 (Alaska 2011) (alteration in original) (quoting *In re Estate of Fields*, 219 P.3d 995, 1009 (Alaska 2009)).

we therefore interpret his argument as similar to the one made unsuccessfully in that case: not "that the language of the statute is unconstitutionally imprecise," but rather "that the statute violates due process because it is too difficult for a motorist who chooses to drink alcohol before driving to gauge if . . . his conduct will violate the statute."[75]

Alaska Statute 28.15.165(c) clearly gives notice that the DMV "*shall* revoke [a] person's license" if a chemical test produces "a result described in AS 28.35.030(a)(2)." (Emphasis added.) The referenced statute, in turn, clearly gives notice of the result that will lead to revocation: "0.08 percent or more by weight of alcohol in the person's blood or . . . 0.08 grams or more of alcohol per 210 liters of the person's breath." Finally, AS 28.90.020 clearly gives notice that "the result described by statute is not affected by the instrument's working tolerance." Because the statutory standards are clear, the question is whether the public can reasonably be expected to conform their conduct to those standards.[76]

In *Valentine*, the court of appeals rejected the argument that AS 28.35.030(a)(2) violated due process because it would be difficult for a driver to predict when — within the four hours allowed for the chemical test — he might reach the proscribed limit of 0.08 blood-alcohol content.[77] The court of appeals cited cases from other jurisdictions[78] and quoted one opinion holding that "[w]here a statute gives fair notice of what is to be avoided or punished, it should not be declared void for

---

[75] 155 P.3d 331, 340 (Alaska App. 2007), *rev'd on other grounds*, 215 P.3d 319, 327 (Alaska 2009).

[76] *See Gottschalk v. State*, 575 P.2d 289, 290 (Alaska 1978) ("Criminal laws must give the ordinary citizen fair notice of what is and what is not prohibited. People should not be made to guess whether a certain course of conduct is criminal.").

[77] 155 P.3d at 339-41.

[78] *Id.* at 340 n.33.

vagueness simply because it may be difficult for the public to determine how far they can go before they are in actual violation."[79] Given Barnebey's failure to develop this due process argument, we see no reason to depart from the court of appeals' reasoning in *Valentine*. When a statute gives fair notice of the proscribed limits, "a person who drinks a substantial amount of alcohol . . . is put on notice that he chooses to drive at his own peril."[80]

**B.     It Was Error To Award Attorney's Fees To The DMV Without Consideration Of AS 09.60.010(c)(2).**

Barnebey contends that the superior court erred when it awarded attorney's fees to the DMV as the prevailing party on appeal without "consider[ing] and address[ing] Barnebey's reliance upon AS 09.60.010(c) in the face of his certainly non-frivolous constitutional claims." Alaska Statute 09.60.010(c) creates a "constitutional litigant" exception to the usual rules governing awards of attorney's fees and costs to the prevailing party.[81] In an appeal "concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska," a court may not order the constitutional claimant to pay the opposing party's attorney's fees if the claimant "did not prevail in asserting the right, the . . . appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the . . . appeal regardless of the constitutional claims

---

[79]     *Id.* at 340 (quoting *United States v. Skinner*, 973 F. Supp. 975, 980 (W.D. Wash. 1997) (quoting *Fuenning v. Superior Court ex rel. Maricopa County*, 680 P.2d 121, 129 (Ariz. 1983))).

[80]     *Id.* (quoting *Bohannon v. State*, 497 S.E.2d 552, 556 (Ga. 1998)).

[81]     *See Manning v. State, Dep't of Fish & Game*, 420 P.3d 1270, 1283 (Alaska 2018).

involved."[82]

It is undisputed that Barnebey asserted a constitutional right to present margin-of-error evidence and that he did not prevail on his claim. The DMV also concedes that Barnebey's appeal was not frivolous. At issue is only the third element of the "constitutional litigant" exception: whether Barnebey had "sufficient economic incentive" to bring the appeal regardless of the constitutional basis of his claims.

"A litigant has sufficient economic incentive to bring a claim when it is brought primarily to advance the litigant's direct economic interest, regardless of the nature of the claim."[83] We determine the claim's primary purpose by looking to the facts of the case and by examining "the nature of the claim and relief sought and the direct economic interest at stake."[84] The issue here is whether Barnebey's interest in retaining his driver's license, undoubtedly an "important property interest,"[85] constitutes sufficient economic incentive to bring a claim under AS 09.60.010(c)(2).

The DMV argues that Barnebey was primarily motivated to appeal out of "concern for his own economic livelihood." Barnebey worked in land surveying; his job required that he drive to various work locations throughout the day. As Barnebey explained in an affidavit, "as a result of the license revocation . . . , my ability to obtain employment has been drastically curtailed and I am accordingly suffering economic hardship." Another land surveyor and co-worker submitted an affidavit in support of

---

[82]    AS 09.60.010(c)(2).

[83]    *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 281-82 (Alaska 2015).

[84]    *Id.* at 282.

[85]    *Whitesides v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, 20 P.3d 1130, 1135 (Alaska 2001) (quoting *Champion v. Dep't of Pub. Safety*, 721 P.2d 131, 133 (Alaska 1986)).

Barnebey's need for a driver's license, explaining that "[a]ny limitation of [Barnebey's] driving privileges . . . severely lessens his ability to obtain employment" in the field and that even if he finds a surveying job, his "earning capacity would be restricted" if he did not have a license.

Barnebey argues, however, that he is "seeking only to retain his basic driver's license," not a "commercial driver's license." He contends that "the importance of a driver's license extends far beyond mere economics so that its revocation has profound impacts on the family, medical, social, and political aspects of life as a human being," and he urges us to "hold categorically that persons raising constitutional claims in the context of exercising their rights to drive . . . are entitled to the benefits and protections of AS 09.60.010, just as the Court has essentially held . . . when subsistence rights are at issue."

We held in *Alaska Conservation Foundation* that "protecting subsistence uses is not sufficient economic incentive to bring a lawsuit."[86] As Barnebey points out, for those living on the road system a driver's license has many non-commercial uses; for many people, access to the grocery store, the doctor's office, church, and political events may depend on their ability to drive. Driving may be necessary for engaging in the social life of the community. It may be difficult in some cases to differentiate between the non-economic benefits citizens derive from their drivers' licenses and the subsistence uses that we have found are not enough to satisfy the "sufficient economic incentive" element of the constitutional claimant statute.

The superior court did not address Barnebey's AS 09.60.010(c) argument in its order awarding fees. In *Titus v. State, Department of Administration, Division of Motor Vehicles*, Titus, like Barnebey, relied on AS 09.60.010(c)(2) to oppose an award

---

[86] 350 P.3d at 286.

of attorney's fees.[87] The superior court in that case, as here, did not address the constitutional-claimant argument in its award of fees.[88] We held in *Titus* that "[i]t was error not to consider Titus's AS 09.60.010 arguments" and vacated the attorney's fee award, remanding the issue to the superior court for further consideration.[89] We do the same here. On remand the superior court should specifically consider whether Barnebey had sufficient economic incentive — beyond the usual non-commercial automobile use endemic to a road-system society — to bring his appeal.

## V.     CONCLUSION

The hearing officer's decision to revoke Barnebey's driver's license is AFFIRMED. The superior court's award of attorney's fees is VACATED, and the case is REMANDED to the superior court for further consideration of the attorney's fees issue in accordance with this opinion.

---

[87]     305 P.3d 1271, 1276 (Alaska 2013).

[88]     *Id.* at 1282.

[89]     *Id.* at 1283.